DUNHAM, Respondent, vs. WISCONSIN GAS & ELECTRIC COMPANY and others, Appellants.

*May 16—June 21, 1938.*

For the appellants there was a brief by *Foley & Brach* of Racine, and oral argument by *Gilbert E. Brach.*

*Gerald T. Flynn* and *Vilas H. Whaley,* both of Racine, for the respondent.

NELSON, J.    The defendants first contend that the plaintiff failed to meet the burden of proving negligence on their part, and that the defendants were guilty of no negligence and violated no duty which they owed to the plaintiff.   These contentions necessitate a recitation of the facts.

On August 17, 1936, the plaintiff, who at that time was sixty-six years of age and weighed one hundred ninety pounds, was standing on the west crosswalk of Park avenue, a north-and-south street, in the city of Racine.   She had stepped from the sidewalk and had taken two or three steps into the street.   She intended to proceed in a southerly direction across Seventh street and then westerly to her home. While the plaintiff was standing there, a "tree trimmer" truck, belonging to Wisconsin Gas & Electric Company, but which had been loaned to the Milwaukee Electric Railway & Light Company, hereinafter called the "defendant company," and which was in charge of its servant, Willis Fisher, was approaching from the west on Seventh street.   The truck

was traveling at a speed estimated by several witnesses to be between fifteen and thirty miles per hour. At that time there was trailing behind the truck thirty or forty feet of No. 8 insulated wire. As the truck proceeded, the wire whipped back and forth from one side of the street to the other. The end of the trailing wire struck the plaintiff's right ankle, wound itself around it, violently pulled her to the ground, and dragged her ten or fifteen feet before the wire became detached from the truck and fell upon the street. The wire which was picked up by the police officers was a little over ninety-five feet in length. The plaintiff, as a result of the accident, sustained a fracture of the skull, severe injuries to her right shoulder and right ankle. Fisher, the driver of the truck, did not know that the wire was trailing and did not know that any accident had occurred until he was informed thereof some time later after reaching the garage of the Wisconsin Gas & Electric Company. Other specific facts will be stated in connection with the defendants' contentions.

Was there evidence which, when fairly and reasonably considered, permits of the inference that the defendants failed to exercise ordinary care which caused the plaintiff's damages? The evidence overwhelmingly supports the inferences: That just prior to the accident, the wire was trailing from the back of the truck; that it was whipping back and forth across the street; that it struck the plaintiff and wound itself around her ankle; that she was, as a result thereof, violently pulled to the street and dragged a number of feet, and that her injuries were caused by the wire trailing from the truck.

In submitting the case to the jury, the court instructed the jury that the doctrine of *res ipsa loquitur* might properly be considered by the jury in determining whether the defendants were negligent. The court instructed fully as to that doctrine, and thereby permitted the jury to infer negligence from the fact that the accident had occurred.

The defendants contend that it was error to instruct the jury that the doctrine of *res ipsa loquitur* was applicable to the facts adduced, because it was not shown that the wire, which caused the plaintiff's injuries, was under the control and management of the defendants. *Stimson v. Milwaukee, Lake Shore & Western R. Co.* 75 Wis. 381, 44 N. W. 748; *Cummings v. National Furnace Co.* 60 Wis. 603, 612, 18 N. W. 742, 20 N. W. 665; *Ashton v. Chicago & N. W. R. Co.* 198 Wis. 618, 225 N. W. 328.

It is our opinion that no conclusion other than that the wire in question was at the time of the accident under the control and management of the defendants could be sustained. The truck in question was of the type known as a "tree trimmer." It was used by the defendant company and its servants in repairing street lights and wiring and in trimming trees. It was equipped with such coils of wire as the company might have occasion to use. At the rear of the truck was an elevated platform upon which was installed a mechanical tower. The accident happened shortly after 4 o'clock in the afternoon. One of the plaintiff's witnesses, who crossed Seventh street just ahead of the truck, testified that he saw the wire before it struck the plaintiff; that it was dangling behind the truck and that when it caught her it broke off and came off the truck; that when he first saw the truck he observed the wire which was trailing behind it; that the wire seemed to be attached to the rear of the truck. Another of the plaintiff's witnesses, who was driving his motor vehicle south on Park avenue and who had stopped at the intersection in question to permit the truck to go by, testified that when the truck came to the corner it had a wire trailing from the back, swinging back and forth across the street; that a part of the wire was all piled up in a heap on the back of the truck; that the roll on the rear platform broke loose after it had dragged the plaintiff; that the wire was on the

back end of the truck just as if it had been thrown up on the back end of a truck, and it was wadded up on the truck. The defendant, Fisher, testified that a standard load of wire was carried in the bed of the truck; that the defendant company does all the electric work of the city of Racine; that it looked to him as if the wire in question was used by the defendant company and not by the gas company; that he was not familiar with the make-up of that particular truck. He further testified that he did not, at any time that day, see any wire like this in the back end of the truck, and did not remember any wire lying at the front end of the truck. He admitted, however, that he did not pay any attention to what was on the truck. He further testified that he did not notice any wire lying on the back end of the truck that day when the work in hand was finished. He further testified that that kind of wire is used by the defendant company. Voss, another member of the repair crew, testified that he did not put any wire on that truck that day; that he did not at any time see any wire lying there on the back end. In answer to the question: "Did you see any [wire] on that truck that day" he answered: "Not on the rear end. There was regular standard equipment but I didn't see that size on the rear." He further testified that he did not exactly make an examination of the wire loaded on the truck that day; that he did not see any loose wire there, and did not see any wire hanging from the rear end of that truck. He further testified that: "We generally get the end and make three or four turns around the whole coil and put it out of the way so it won't get tangled up." Hone, the foreman of the crew, testified that there was no other wire there (referring to the back of the truck). A Mr. Clark, who was the general foreman of the defendant company, testified that the defendant company used No. 8 wire, and that other contractors bought it from the defendant company and from another Racine company. He testi-

fied that all wire must be coiled up, and that when the wire is coiled up the ends are wrapped around the coil itself and then, if that is not sufficient, "we use tie wires or pieces left over from other ends." He further testified that the defendant company used this type of wire, No. 8, and that "all of the trucks carry loose wire on the bed of the truck." Two other witnesses who were riding in an automobile which was being driven in an easterly direction along Seventh street at a distance of about three-quarters of a block behind the truck, testified that they did not observe any wire trailing from the truck until just shortly before the plaintiff was pulled off her feet. It clearly appears that some of the testimony above recited is positive and some of it is negative in character. It is our opinion that the facts adduced impel the conclusion that the wire in question, just before, and at the time of the accident, was under the control of the defendants, and that the following rule was applicable:

"In an action for personal injury caused by the alleged negligence of the defendant, the plaintiff must adduce reasonable evidence of negligence to warrant the judge in leaving the case to the jury; but when the thing is shown to be under the management of the defendant or his servants, and the accident is such as, in the ordinary course of things, does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care." *Scott v. L. St. K. Docks Co.* 3 Hurl. & C. 596. Cited with approval in *Kirst v. Milwaukee, Lake Shore & Western R. Co.* 46 Wis. 489, 1 N. W. 89; and in *Cummings v. National Furnace Co., supra,* p. 612.

We think it clear that this accident was of that kind or nature which does not ordinarily happen and which could not reasonably have happened if the wire in question had been properly coiled up, with its ends wrapped around the coil or otherwise rendered secure by tie wires. Certainly, had this particular coil of wire been so secured it could not have un-

wound and trailed behind the truck. The fact that the wire was so trailing "speaks for itself," and permits of the inference that the defendant company, or its servants, did not exercise ordinary care in securing the ends of the wire in question. We think, therefore, that the court properly instructed the jury that the doctrine of *res ipsa loquitur* was applicable to the facts adduced, and that the finding of the jury that the trailing of the wire was due to a want of ordinary care on the part of the defendants, is supported by the evidence.

The only other contention of the defendants which, in our opinion, merits consideration, is that the damages found by the jury are excessive. We have carefully considered all of the evidence, relating to the question of the plaintiff's damages, with the result that we are of the opinion that the damages found are excessive. As to the hospital and medical expenses, it is conceded that the sum of $1,662.04 is correct, and that that amount was properly inserted in the verdict of the jury. The jury found that the plaintiff's damages because of loss of income amounted to $1,800. That amount, in our opinion, is not excessive, assuming that it includes all loss of income suffered by the plaintiff up to the time of the trial and also all loss of income that she will suffer to a reasonable certainty in the future. That finding was, in our opinion, warranted under the court's instructions. Up to the time of the trial, her loss of income did not exceed the sum of about $220, but she had a life expectancy of 10.54 years, according to the American Experience Table of Mortality. Her health was good and she was strong and vigorous at the time she was injured. As to the finding of the jury that the plaintiff's damages for pain and suffering amounted to $2,500, that amount cannot be said to be excessive if it includes such bodily pain and suffering, mental suffering, and impairment of health and physical injuries as she had suffered prior to the time of the trial and is reasonably certain to suffer in the future. The jury found that the plaintiff's

damages for permanent disability were $5,000. Assuming that the damages found for loss of income included not only loss of income already sustained, as well as loss of income, which, to a reasonable certainty the plaintiff will suffer in the future, and assuming that the damages found for pain and suffering included not only that suffered by her prior to the trial, as well as that which she, with reasonable certainty, will suffer in the future, then the damages found for permanent disability are in our opinion excessive. The court, after having instructed the jury that the jury should find such sum "as will reasonably compensate her for such bodily pain and suffering, mental suffering and impairment of health and physical injuries as you are satisfied by a fair preponderance of the evidence she has suffered heretofore or is reasonably certain to suffer in the future as a result of the injuries complained of, including all mental worry," subsequently instructed with respect to permanent disability and impairment of health as follows:

"If you are satisfied from the evidence that she has sustained permanent disability and impairment of health as a result of such injuries, having considered the nature and extent and the reasonably certain effects thereof, you should include such prospective damages on account *of bodily and mental suffering,* impairment of health and disability, if any, as you are satisfied from the evidence she will sustain to a reasonable certainty in the future as a result of her injuries, and you may consider the deprivation suffered by her of the usual assurable activities and enjoyments of one of her age."

The instructions relating to damages would perhaps not have been misleading if the jury had been called upon to find damages in a lump sum. However, the instructions, when applied to the questions submitted, are confusing. The jury was instructed that after having found the amount of the damages caused by pain and suffering in the past and which the plaintiff was reasonably certain to suffer in the future, they could also consider the element of "bodily and mental

suffering" in connection with considering the damages sustained by the plaintiff for permanent disability and impairment of health.

Since there must be a new trial on the question of damages, we deem it unnecessary to review the testimony bearing upon this question. If trial courts in personal-injury actions submit verdicts which permit juries to find various items of damages, the instructions should specifically relate to each of the items, so that juries will not render verdicts in which the damages are duplicated for the same loss.

*By the Court.*—The judgment is affirmed in all respects except as to the damages. The judgment is reversed, and the cause remanded with directions to grant a new trial on the question of damages only.