MAYR, Plaintiff and Respondent, vs. MILWAUKEE & SUBURBAN TRANSPORT CORPORATION, Defendant and Appellant: MUTUAL AUTOMOBILE INSURANCE COMPANY OF WISCONSIN and another, Defendants and Respondents.*

*January 8—February 5, 1957.*

* Motion for rehearing denied, with $25 costs, on April 9, 1957.

618

For the appellant there were briefs by *Kivett & Kasdorf,* attorneys, and *Clifford C. Kasdorf* and *Alan M. Clack* of counsel, all of Milwaukee, and oral argument by *Clifford C. Kasdorf.*

For the respondent Otto Mayr there was a brief and oral argument by *Paul Pike Pullen* of Milwaukee.

For the respondent Mutual Automobile Insurance Company there was a brief by *Holden & Schlosser* of Sheboygan, and oral argument by *Wayne W. Schlosser.*

For the respondent Roger Eternick there was a brief by *Quarles, Spence & Quarles,* attorneys, and *Walter P. Rynkiewicz* of counsel, all of Milwaukee, and oral argument by *Mr. Rynkiewicz.*

FAIRCHILD, J.   The appellant asserts that the jury must believe the testimony of its motorman that he saw the step

in its proper position at the opposite end of the run. Appellant argues that there being no evidence of any intervening occurrence sufficient to put the motorman on notice of damage to the step, the jury's finding that the motorman ought to have known of the defective step before the collision was unsupported by evidence. The appellant also challenges the finding that the partially open position of the step was a cause of the collision and asserts that the jury's findings of negligence on the part of the motorman as to lookout and management and control were unsupported. Mutual Auto asserts that there is no credible evidence that Eternick's negligence in failing to operate his automobile on the right half of the street was causal.

The jury could properly draw the inference that the motorman ought to have known of the condition of the step. It had not been used since the motorman had last been stationed at the number two end of the car. The step and the door were controlled by a set of rods and levers which were described and exhibited to the jury. When working properly, the door and the step must work together, and the step does not go partially down unless the door is open to the same degree. The step was at about a 45-degree angle and extending about 6 or 7 inches out from the car. It was seen in that position by Eternick just before the collision and by Link two blocks east of the point of impact. There was no testimony that the door was open until after the collision. The motorman had removed the handle which controls the door when leaving the number two end. There was no testimony that the door was or could have been opened by one of the passengers and the jury might infer that if the door had been open for two blocks or more, the motorman should have noticed it. The only way in which the step could have been part way down without the door being open, as far as the evidence shows, was for a particular nut to become loose, and appellant offered no testimony whether or not this nut

was inspected after the accident. The rods and levers controlling the door and step had not been in use since the motorman had been operating from the number two end.

This is a proper situation in which to apply the doctrine of *res ipsa loquitur,* and the findings of negligence with reference to the step are supported in the light of that doctrine. The devices for controlling the door and step were in the exclusive control of the motorman. In the ordinary course of things, and assuming due care on his part, the step is turned up close to the streetcar at all times while in motion. Appellant's shop employees gave the jury a detailed description of the devices controlling the door and step, but failed to explain how the step could be down if the motorman was free from negligence. Their testimony tended mainly to show that if the step was part way down, the door must not have been properly closed. These employees are thoroughly familiar with the controls and also had a full opportunity to inspect the streetcar immediately after the collision.

The decision in *Dunham v. Wisconsin Gas & Electric Co.* 228 Wis. 250, 256, 280 N. W. 291, is in point. There the plaintiff pedestrian was struck and tripped by a wire which trailed from the back of defendant's truck. Defendant's driver did not know the wire was trailing. The jury found negligence. This court applied the rule that " 'when the thing is shown to be under the management of the defendant or his servants, and the accident is such as, in the ordinary course of things, does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care.' "

The jury heard the motorman's testimony that the step was in its closed position at the opposite end of the previous run. His experience could be deemed somewhat limited and he was an "extra" rather than a "regular" operator. He had an obvious interest in demonstrating that he had not

been careless. It would have been difficult for him to observe the position of the step from the inside of the streetcar by looking through the closed door. These factors evidently caused the jury to disbelieve his testimony that the step was in its proper place at the end of the previous run.

There can be no doubt but that the protrusion of the step six inches farther than the widest part of the rest of the streetcar and six inches farther than it normally would protrude was a cause of the collision. It is virtually undisputed that had the step been closed in its proper position, no collision would have occurred.

The motorman testified that he first saw the Eternick car as he approached the west end of the eastbound streetcar. Assuming the fact to be, as the jury could properly and apparently did find, that Eternick was at all times stationary with the left side of his car protruding several inches over the center line of the street and in view of the testimony of the motorist Link who was following the westbound streetcar, to the effect that he was able to see the Eternick car from his position behind the westbound streetcar, it is clear that the jury could properly find as it did that the motorman was not sufficiently observant as he approached the point of collision. There is also testimony that after the motorman did see the Eternick car he continued westward without stopping or slackening his speed until after he heard the crash. Certainly with the Eternick car protruding some seven inches over the center line of the street so that the clearance between the westbound streetcar and the Eternick car was reduced from the one foot it would have been if Eternick were on his own side of the street to a few inches, and since the streetcar was swaying as it moved along, it was certainly proper for the jury to find that the motorman was negligent in failing to slow down or stop the streetcar until he could determine that he could pass the Eternick car in safety.

As to the claim of Mutual Auto that the position of Roger Eternick on the street was not a cause of the collision, Eternick evidently misjudged his position and the location of the center line. While it appears that he did remain stationary and that he had little or no room in front of or behind him in which to maneuver his automobile, his stopping in a position causing danger of a collision with those rightfully using the north half of the street was causal negligence. Had he stopped his car on his proper side of the road the collision would not have occurred just as it would not have occurred if the streetcar step had been in its proper position or if the motorman had stopped or slowed his car until he could determine that passage could be made in safety.

Judgment was entered in favor of Eternick and against the Transport Corporation for 90 per cent of the total damages found to have been suffered by Eternick. While it is our view that the evidence was sufficient to sustain the various findings of causal negligence on the part of the Transport Corporation, the jury's answer apportioning negligence cannot support the judgment in favor of Eternick. As matters stood when the jury answered question No. 9, apportioning negligence, the jury had found causal negligence on the part of the motorman in three respects; the court had answered question No. 7 (c), finding that Eternick was negligent with respect to failing to operate his automobile on the right half of the street; the jury had exonerated him from negligence as to management and control, and lookout; and the jury had answered question 8 (c) so as to find that the negligence of Eternick with respect to failing to operate his automobile on the right half of the street was not a cause of the collision. The jury should either have made answers finding causal negligence in at least one of the three respects inquired about or have omitted an answer to the apportionment question. As the verdict stood when returned

it was inconsistent. It was also erroneous because Eternick's negligence in failing to operate his automobile on the right half of the street was a cause of the collision as a matter of law and the court correctly changed the answer to question No. 8 (c) accordingly. Thus the court's action corrected the verdict in that respect but could not resolve the inconsistency which existed when the verdict was returned because more than one element of negligence had been submitted. *Statz v. Pohl,* 266 Wis. 23, 32a, 62 N. W. (2d) 556, 63 N. W. (2d) 711 (on motion for rehearing).

Because some causal negligence on the part of Eternick was properly found by the court the judgment is supported by the verdict in so far as it awards recovery in favor of Mayr and against Eternick and his insurer as well as the Transport Corporation and for contribution among the defendants but it follows that there must be a new trial as to the issues relating to liability of the Transport Corporation for Eternick's damages.

Appellant's appendix was insufficient. In particular it failed to include the special verdict and an index of exhibits. Appellant's printing costs will therefore be limited to its briefs exclusive of the appendix.

*By the Court.*—The judgment in so far as it adjudges recovery by Roger Eternick of $491.65 from the Milwaukee & Suburban Transport Corporation is reversed, and the cause is remanded for a new trial on all issues material thereto, except damages; in all other respects the judgment is affirmed. Appellant's costs for printing are limited to its briefs exclusive of the appendix.

BROWN, J. (*dissenting*). I must dissent because I am unable to find in the record evidence to support the finding in the special verdict that the motorman knew or should have known of the defective step. For him to be charged with such knowledge the defect must have existed long enough

for him to become aware of it in the reasonable performance of his duties. The jury may have disbelieved his story that when he started his return trip the step was properly closed, but such disbelief does *not* of itself establish the contrary. I consider the plaintiff's proof fails in the essential element of the length of time before the accident during which the defect was discoverable.

I am authorized to state that Mr. Justice STEINLE and Mr. Justice WINGERT are of the same opinion.