Rost v. Roberts, 180 Wis. 207.

---

ROST, Appellant, vs. ROBERTS, Respondent.

*January 13—April 3, 1923.*

*Physicians and surgeons: Degree of care required: Malpractice: X-ray burns: Negligence: Res ipsa loquitur: Burden of proof: Evidence: Expert testimony: Waiver of objection to competency of witness.*

1. Under the doctrine of *res ipsa loquitur,* which permits an inference of negligence from the mere proof of an injury or accident where it appears that the injury or accident would not or could not have happened except for the negligent conduct of defendant, the plaintiff makes a case for the jury by

proof of the accident or injury; but though it devolves upon the defendant to overcome such evidence, the plaintiff is never relieved of the burden of proof, meaning thereby the burden of proving by a preponderance of the evidence the facts necessary to entitle him to recover.

2. In an action against a physician for burning by X-ray treatments, an instruction which told the jury that they might consider the fact that plaintiff was burned as evidence of defendant's negligence, in connection with all other evidence in the case, accorded the full benefit of the *res ipsa loquitur* rule, and was as favorable to him as the law permits.

3. Where the evidence suggested that the burn might have been caused by the negligence of the defendant or because of the supersensitive skin of the plaintiff, the court did not err in that he did not instruct that the burden of proving that the burn resulted from a supersensitive skin or the peculiar susceptibility of plaintiff to the effect of the X-ray was upon the defendant.

4. If it appeared that there was as much reason to believe that the burn resulted from the peculiar susceptibility as from the negligent treatment, a verdict could not go against the defendant.

5. The failure of the court to give a proper instruction is not reversible error in the absence of a request for such an instruction by the party interested.

6. An instruction that an honest mistake of judgment, if that judgment was formed with due care and skill, does not render the defendant liable for the consequences, if what was done was in all respects in accordance with the common practice under all the circumstances involved, was proper.

7. When a medical practitioner is offered as an expert, it is incumbent upon the party calling the witness to prove his competency, and the opposing party may object to his giving expert testimony until such competency appears; but unless objection to the competency of the witness is made before he gives testimony it is waived.

APPEAL from a judgment of the circuit court for Columbia county: CHESTER A. FOWLER, Circuit Judge. *Affirmed.*

Malpractice. The defendant is a physician in practice at Portage. In July, 1920, plaintiff, twenty-seven years of age, was afflicted with pustular acne, a disease of the sebaceous oil glands. He applied to the defendant for treatment of the malady. Defendant advised X-ray treatments.

Such treatments were administered July 2d, 5th, 9th, and 11th. After the last treatment plaintiff returned to his work at Milwaukee, and in about a week an area of about 144 square inches on his back became red and somewhat irritated. A few days later it turned blue, then black, the skin cracked, began to peel, and some pus was present. The condition constituted an X-ray burn due to an over-dosage of X-radiance. The burn was obstinate to treatment. It caused plaintiff great suffering and was not healed until well along in the summer of 1921.

Plaintiff brought this action to recover damages. Defendant counterclaimed for the value of his services in giving such treatments and in treating the burn resulting therefrom in the sum of $431. He also counterclaimed for the value of his services in treating a self-inflicted gunshot wound in the sum of $165. A general verdict was rendered in favor of the defendant assessing his damages at $560, the same being the full amount claimed by him for his services in treating the plaintiff. From a judgment rendered on the general verdict in favor of the defendant the plaintiff brings this appeal.

For the appellant there was a brief by *C. H. Metzler,* attorney, and *Grady & Farnsworth,* of counsel, all of Portage, and oral argument by *Daniel H. Grady.*

For the respondent there was a brief by *Rogers & Rogers* of Portage, attorneys, and *Lines, Spooner & Quarles* of Milwaukee, of counsel, and oral argument by *H. B. Rogers* and *Charles B. Quarles.*

The following opinion was filed February 6, 1923:

OWEN, J. The issues developed during the trial were about as follows: Plaintiff contended that the defendant was guilty of negligent practice in administering an overdosage of X-radiance. The factors to be considered in determining the amount of X-ray dosage administered are

(1) target distance from the skin; (2) milliamperes of current used; (3) duration and frequency of exposure; and (4) spark gap. There was a conflict in the evidence with reference to two of these factors, namely, target distance and duration of exposure. The defendant testified that the target distance was eighteen inches, the plaintiff testified that it was four; defendant testified that the first three exposures were of three minutes, and the last of six minutes, duration, making a total exposure of fifteen minutes. The plaintiff testified that each treatment involved an exposure of fifteen minutes duration. All of the medical experts, including the defendant, testified that if the exposure had been as stated by plaintiff the treatments would result in over-dosage and constitute improper practice. They disagreed as to whether the dosage resulting from the treatments administered as testified to by the plaintiff constituted proper treatment. Defendant maintained that the dosage was such as is usually and customarily administered in the treatment of pustular acne, and that the burn was due to the hypersensitive skin of the plaintiff and an extraordinary susceptibility on his part to the effect of X-ray treatments.

These questions were thoroughly litigated, and, in view of the fact that the jury rendered a verdict not only against the plaintiff upon his cause of action but in favor of the defendant upon his claim for services in administering the treatment and in treating the resulting burn, it is plain that the jury found for the defendant upon all questions in controversy. It is not contended here, seriously at least, that the verdict is without support in the evidence. A reversal is sought because of alleged errors occurring during the trial.

The assignment of error perhaps most insistently argued on the part of appellant arises from that portion of the charge which placed the burden of proof upon the plaintiff. It is claimed that the following portions of the charge constitute prejudicial error, namely:

"For the plaintiff to recover it is essential that he satisfy

you to a reasonable certainty by a preponderance of the evidence of the facts essential to his cause of action—that is, that the defendant was guilty of malpractice and that this malpractice resulted in injury to him. If you are satisfied of the existence of these two facts your verdict will be for the plaintiff. If not so satisfied your verdict will be for the defendant upon his counterclaim, as to which I will more particularly instruct you later."

"Upon the general proposition of negligence I will say finally that the burden of proof is upon the plaintiff to show that original burn of the plaintiff was caused by negligence of defendant, and that it was more severe than reasonably necessary for curative purposes. It is not enough to show that such burn may have resulted from such cause."

Appellant claims that the doctrine of *res ipsa loquitur* applies to the case; that a presumption of negligence arises from the proof of the burn; and that the mere showing of the bad result shifted the burden of proof upon the defendant to disprove negligence. It seems unnecessary for us to consider whether the doctrine of *res ipsa loquitur* is applicable in case of a bad result from X-ray treatments administered by a physician to a patient as a curative agency. In the first place, plaintiff did not rely upon the doctrine of *res ipsa loquitur*. He undertook to prove as a part of his main case the amount of dosage administered, and that, whether in accordance with the testimony of the plaintiff or the defendant, it was an excessive dosage and constituted improper practice.

*Res ipsa loquitur* is a doctrine which permits an inference of negligence from the mere proof of an injury or accident where it appears that the injury or accident would not or could not have happened except for the negligent conduct of the defendant. In such cases it is held that the plaintiff makes a case for the jury by proof of the accident or injury, it being permissible for the jury to infer negligence from the fact that the injury or accident occurred. Manifestly he is in no better position, so far as the burden of proof devolving upon him is concerned, than if he had made out a case for the jury by affirmative evidence of negligence.

The burden of proof was upon the plaintiff at the beginning of the trial to establish by a preponderance of the evidence the facts which entitled him to recover. This is a burden which the law imposes upon every plaintiff, and this burden remains upon him throughout the trial. 4 Wigmore, Evidence, § 2489. It is with him at the close as well as at the beginning, and in order for him to recover the jury must find that the facts entitling him to recover are established by a preponderance of the evidence. Of course when the plaintiff has introduced evidence sufficient to justify a verdict in his favor, it devolves on the defendant to meet and overcome such evidence. But the plaintiff is never relieved of the burden of proof, meaning thereby the burden of proving by a preponderance of the evidence the facts necessary to entitle him to recover.

In a similar case (*Sweeney v. Erving*, 228 U. S. 233, 240, 33 Sup. Ct. 416) the federal supreme court said:

"In our opinion, *res ipsa loquitur* means that the facts of the occurrence warrant the inference of negligence, not that they compel such an inference; that they furnish circumstantial evidence of negligence where direct evidence of it may be lacking, but it is evidence to be weighed, not necessarily to be accepted as sufficient; that they call for explanation or rebuttal, not necessarily that they require it; that they make a case to be decided by the jury, not that they forestall the verdict. *Res ipsa loquitur*, where it applies, does not convert the defendant's general issue into an affirmative defense. When all the evidence is in, the question for the jury is whether the preponderance is with the plaintiff."

This question is comprehensively treated in a note to be found in 16 L. R. A. N. s. 527. The editor opens the note by saying: "There are almost numberless cases in which the courts have expressed their understanding of the effect of the rule *res ipsa loquitur* by the formula that an accident to which the rule applies creates a presumption of negligence and casts upon the defendant the burden of proof,

without explaining or in any way qualifying the phrase 'burden of proof.'" He concludes, however, that few if any courts which have expressly considered the question have disputed that the presumption which arises in favor of the plaintiff in a case to which the doctrine of *res ipsa loquitur* applies does not cast upon the defendant the burden of proof in the sense that the defendant is bound to establish freedom from negligence by a preponderance of evidence. This position is not in conflict with the declarations of this court upon the question. · The cases relied upon by appellant (*Hildebrand v. Carroll*, 106 Wis. 324, 82 N. W. 145; *Lipsky v. C. Reiss Coal Co.* 136 Wis. 307, 117 N. W. 803; *Cummings v. Nat. F. Co.* 60 Wis. 603, 18 N. W. 742, 20 N. W. 665; *Carroll v. C., B. & N. R. Co.* 99 Wis. 399, 75 N. W. 176; *Galpin v. C. & N. W. R. Co.* 19 Wis. 604) do not support his contention. In fact, the doctrine here stated was expressly recognized in *Lipsky v. C. Reiss Coal Co.* 136 Wis. 307, 313, 117 N. W. 803, in the following language:

"Further, however, it is contended that in the last few lines the instruction throws upon the defendant the burden of proof to negative its negligence; in other words, to show that due care and vigilance were exerted. If we can reasonably believe that it may have been so understood by the jury, doubtless error lurks therein. The burden of proof to satisfy the jury of the existence and proximate responsibility of negligence in the defendant at all times rests upon the plaintiff, and yet when the plaintiff has proved a situation which, unexplained, authorizes an inference or presumption of such negligence, and a specific fact is testified to on behalf of the defendant, of course, in the nature of things, the jury are not justified to believe in the existence of that specific defensive fact, unless satisfied by the preponderance of evidence."

This is a plain recognition of what we deem the true rule. The court expressly says that if the instruction could be interpreted as throwing the burden of proof upon the de-

fendant "error lurked therein." It plainly says that the burden of proof to satisfy the jury of the existence and proximate responsibility of negligence in the defendant at all times rests upon the plaintiff, although where it rests upon the defendant to establish an affirmative defensive fact the jury should not find the existence of such fact unless satisfied by the preponderance of the evidence.

The court charged the jury as follows:

"If you believe from the evidence that when proper care is used in administering the X-ray in the treatment of pustular acne a burning of the patient to the extent here shown is not likely to result, under all the conditions here involved, then the fact that plaintiff was so burned may be considered by you as evidence that the defendant did not use due care, skill, and judgment in administering the X-ray to plaintiff; but in determining the fact in this regard you must also consider all the testimony of the physicians testifying as to proper practice and dosage, and decide it upon all the evidence in the case. bearing in any way upon the point."

By this instruction the jury were informed that they might consider the fact that plaintiff was burned as evidence of defendant's negligence, in connection with all the other evidence in the case. This really accords the plaintiff the full benefit of the *res ipsa loquitur* rule and was as favorable to him as the law permits. The alleged error resulting from placing the burden of proof on the plaintiff cannot be sustained.

Error is also assigned because the court did not instruct the jury that the burden of proving that the burn resulted from a supersensitive skin or peculiar susceptibility of the plaintiff to the effect of the X-ray was upon the defendant. The evidence suggested two possible reasons for the burn: one was the negligence of the defendant, and the other was the supersensitive skin or a peculiar susceptibility on the part of the plaintiff to the effect of the X-ray treatments. Plaintiff contended that the burn was the result of the neg-

ligence of the defendant.   The defendant contended that
it was the result of a supersensitive skin of which he had
no knowledge and which he could not discover by the exer-
cise of due care.   The court instructed the jury generally
that the burden of proof was upon the plaintiff to establish
facts entitling him to recover.   This is correct.   In this con-
nection the court further charged the jury as follows:

"Where proof discloses that a given result may have been
produced by either of two or more things operating as
causes, one of which things is negligence of the defendant,
and there is as much reason to believe that it resulted from
one as from any other, the jury is not justified in attribut-
ing it to negligence of the defendant."

"If the result complained of is as reasonably attributable
under the evidence to a cause or condition independent of
the defendant's acts as to negligence on his part, the proof
does not establish negligence."

This also is correct.   *Musbach v. Wis. C. Co.* 108 Wis.
57, 84 N. W. 36; *Quass v. Milwaukee G. L. Co.* 168 Wis.
575, 170 N. W. 942; *Klein v. Beeten,* 169 Wis. 385, 172
N. W. 736; *Matuschka v. Murphy,* 173 Wis. 484, 180
N. W. 821.   This rule of law was applicable to the case.
The burden was not upon the defendant to establish that
the burn in fact resulted from the peculiar susceptibility of
the plaintiff.   If it merely appeared that there was as much
reason to believe that the burn resulted from the peculiar
susceptibility as from the negligent treatment, a verdict
could not go against the defendant.   But even though the
burden was cast upon the defendant to show that the burn
resulted from the peculiar susceptibility of the plaintiff, the
failure of the court to so instruct the jury does not work
reversible error in the absence of a request on the part of
the plaintiff for such an instruction.   "Where the court has
instructed the jury upon all the main questions involved, the
failure to give additional or more specific instructions, which
were not requested by counsel, is not error."   *Austin v.
Moe,* 68 Wis. 458, 32 N. W. 760.   See, also, *McCoy v.*

*Milwaukee St. R. Co.* 88 Wis. 56, 59 N. W. 453; *Walter A. Wood M. & R. M. Co. v. Calvert,* 89 Wis. 640, 62 N. W. 532; *Owen v. Long,* 97 Wis. 78, 72 N. W. 364.

It is further claimed that there was no evidence that plaintiff was peculiarly susceptible. The evidence showed that some persons are peculiarly susceptible to X-ray treatments and that unexpected results do sometimes ensue from such treatments; that the treatment administered was the usual and ordinary treatment for pustular acne from which a burn such as plaintiff suffered was not likely to follow. If the jury believed the experts who so testified they were warranted in inferring that it was as probable that the burn resulted from peculiar susceptibility as from negligent treatment.

The court charged the jury as follows:

"An honest mistake of judgment, if that judgment was formed with due care and skill, does not render the defendant liable for the consequences. If what was done was in all respects in accordance with the common practice under all the circumstances involved, you must find for the defendant on the issue of negligence."

The appellant challenges the correctness of this instruction on the ground that it does not correctly state the duty imposed upon a physician. It is contended that a physician is not protected by simply following the common practice in his community; that besides being common practice it must also be proper practice. *Stenkowicki v. Lytle,* 171 Wis. 625, 177 N. W. 849, is cited in support of the contention. That case casts no doubt upon the general rule obtaining not only in this state but elsewhere, that the legal duty of a physician to his patient is discharged when he exercises that degree of care, diligence, judgment, and skill which physicians in good standing of the same school of medicine usually exercise in the same or similar localities under like or similar circumstances, having regard to the advanced state of medical or surgical science at the time.

*Jaeger v. Stratton,* 170 Wis. 579, 176 N. W. 61, and cases there cited. The *Lytle Case,* so far as it affects this question, merely holds that a physician is not confined to the common practice of his community, but that he is at liberty to adopt better methods than obtain in his community. The instruction as given is in accord with the well settled law upon the subject.

Exceptions are taken to numerous rulings upon the admission of evidence. We have considered them all and conclude that if any of such rulings involve error they were not prejudicial. They related to rather trivial and unimportant matters, and even though contrary rulings had been made in each instance we do not see how the result could have been affected. We will refer to but one of this class of alleged errors.

It is claimed that a new trial should have been granted because Dr. Trostler, an expert witness for the defendant, was not qualified to testify. Dr. Trostler was a practicing physician in Chicago. Sec. 1435*i*, Stats., provides that only such medical practitioners as are licensed to practice in this state shall be competent to testify as experts. Dr. Trostler, it appears by affidavits accompanying the motion for a new trial, was not licensed to practice in this state. But appellant cannot raise the question in this manner. When the testimony of a medical practitioner is offered as an expert, it is incumbent upon the party so offering it to prove his competency, and the opposing party may object to his giving expert testimony until such competency appears. Although no evidence was offered as to whether Dr. Trostler was licensed to practice medicine in this state, the appellant stood by and permitted him to testify without making any objection on the ground that his competency had not been shown. Upon the most fundamental principles he waived the right to object. He cannot sit by and permit the testimony of a proffered medical expert to come in before he concludes whether or not he will object. We

hold that objection to the testimony of a medical expert on the ground that he is not competent or qualified must be made at the time the testimony is offered; and if not so made the objection is waived.

A ·careful consideration of the record reveals no error, and the judgment must be affirmed.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, with $25 costs, on April 3, 1923.