DAHL, Appellant, vs. CHARLES A. KRAUSE MILLING COMPANY, Respondent.

*November 9, 1939—April 9, 1940.*

For the appellant there were briefs by *Bender, Trump & McIntyre,* attorneys, and *Rodger M. Trump* and *Kneeland A. Godfrey* of counsel, all of Milwaukee, and oral argument by *Mr. Trump* and *Mr. Godfrey.*

For the respondent there was a brief by *Lines, Spooner & Quarles* and *Willis G. Sullivan,* attorneys, and *Charles B. Quarles* of counsel, all of Milwaukee, and oral argument by *Mr. Quarles* and *Mr. Sullivan.*

The following opinion was filed January 16, 1940:

MARTIN, J. At about 3:30 p. m. on April 10, 1937, plaintiff accompanied his father, an employee of defendant company, into defendant's mill. Within fifteen or twenty minutes thereafter a violent explosion occurred which completely demolished the building in which the plaintiff and his father were, together with other buildings. As a result of said explosion, plaintiff sustained serious injuries.

Plaintiff contends that the buildings and premises were public buildings within the meaning of ch. 101, sec. 101.01 *et seq.,* Stats., and that plaintiff, when injured, was a frequenter within the meaning of said chapter, that in any event, defendant's premises were a place of employment. The jury found that plaintiff had defendant's consent, either express or implied, to enter its premises on the day in question. Defendant contends that the trial court should have changed the answer to the first question of the special verdict from "Yes" to "No." We are of the view that the evidence is sufficient to sustain a finding of implied consent and that the answer "Yes" to the first question must stand.

The plaintiff alleges that the explosion in question was caused by the failure of the defendant to furnish a safe place of employment, and to construct, maintain, or provide a safe place by not adopting and using such methods and processes which would render such premises and buildings as free from danger to the life, health, safety, or welfare of frequenters or of the public as the nature of said building or place would reasonably have permitted; in that defendant permitted an unreasonable amount of dust of a highly explosive nature to accumulate upon the premises and to saturate the atmosphere therein to such an extent that an explosion was imminent; in that defendant failed to furnish adequate and sufficient machinery and equipment with which to remove and collect such dust which was in the atmosphere

and accumulated upon the premises; in that defendant failed to use such machines and equipment upon said premises which were adequate to prevent the escape of such dust from its milling machines into the atmosphere in and about such premises; in that defendant failed to provide and maintain upon said premises sufficient and adequate machinery and equipment with which to prevent the ignition of such dust and to use adequate and proper precautions in and about said premises to prevent such explosion; in that the defendant failed to properly inspect its premises to discover and remedy conditions which might tend to produce an explosion; and in that the defendant failed and neglected to warn plaintiff of imminent danger then existing upon the premises by reason of a likelihood of an explosion occurring upon its premises, although defendant was well aware of the fact that by reason of the method of operation of said business and the condition of its premises, which facts were not within the knowledge of plaintiff, there was imminent danger of an explosion on said premises. It is further alleged that as a proximate result of the alleged violations of duties by defendant, plaintiff was injured.

These issues are covered by the second question in the special verdict. The jury found defendant did not fail to adopt and use methods and processes reasonably adequate to render the place of employment as free from danger to the life, health, safety, or welfare of employees or frequenters as the nature of the employment and place of employment would reasonably permit: (a) As to sweeping and removal of dust; and (b) as to furnishing and using a vacuum-cleaning system for the sweeping of dust. The jury did find defendant negligent, (c) as to maintenance and repair of spouts and conveyors; (d) as to maintenance of electric motors; and (e) as to maintenance of electric switches, and also found that each of these failures to maintain a safe place was an efficient cause of plaintiff's injuries.

The trial court changed the answers to subdivisions (c), (d), and (e) of the second question of the special verdict from "Yes" to "No" on the ground that the affirmative answers to said subdivisions were not supported by the evidence. With the answers so changed, the court ordered judgment dismissing the complaint upon the merits. Assuming that these answers may be sustained by the evidence, it does not follow that such failure caused the explosion and plaintiff's resultant injuries. We are of the view that the jury's finding as to causation was purely conjectural and speculative.

The jury found that there was no failure on the part of the defendant to adopt and use reasonably adequate methods to render the place of employment as free from danger to the life, health, safety, or welfare of the employees or frequenters as the nature of employment and place of employment would reasonably permit as to sweeping and manual removal of dust, and with respect to furnishing and using a vacuum system for the sweeping of dust. The remaining issues covered by subdivisions (c), (d), and (e) relate to maintenance and repair of spouts, conveyors, electric motors, and switches. Plaintiff argues that defendant's failure as to the maintenance and repair of spouts and conveyors resulted in the accumulation of an unreasonable amount of dust in defendant's mill. The jury by its answers to question 2, subdivisions (a) and (b), found that the methods and processes adopted and used by defendant for the removal of dust were adequate. We fail to find any evidence to sustain a finding that any lack of maintenance and repair of the spouts and conveyors were contributing causes to the accident. The same is true as to the electric motors and electric switches which, at the time they were installed in defendant's mill, complied with the state electric code. In *Waterman v. Heine-*

*mann Brothers Co.* 229 Wis. 209, 212, 282 N. W. 29, the court said:

"When the commission [industrial commission] has provided the necessary elements of safety applicable to a particular place it is not for the court or jury to establish others." Citing *Skrzypczak v. Konieczka,* 224 Wis. 455, 272 N. W. 659.

It appears that prior to the explosion defendant had installed some second-hand motors in its mill. However, the testimony shows that these were rebuilt motors and carried a new guaranty. We can find no evidence that any of the electrical equipment in defendant's mill was out of repair at the time of the explosion.

It appears that following the explosion, the industrial commission caused an investigation to be made to determine, if possible, the cause of the explosion. In that connection Mr. John E. Wise testified that he was employed by the industrial commission as an electrical engineer and has been so employed since July, 1926; that shortly after April 10, 1937, he made an inspection of the Krause Milling Company's plant in his official capacity; that he made the inspection in company with the chief engineer of the industrial commission, the building engineer, and the superintendent of fire prevention; that such investigation was made to determine, if possible, the cause of the explosion, that they went into the plant and through such parts as it was possible to get into at such time and looked over the construction of the building, more particularly the condition of the electrical equipment, to determine how it had been installed and whether it was still in good condition, with the idea of determining, if possible, anything which might have been the cause. He was interested primarily as an electrician in determining whether the explosion was caused through any

defect in the electrical apparatus—as to whether there might have been anything connected with the electrical equipment which might have contributed and caused the difficulty. He inspected a good many motors. A few of them were not accessible as they were covered up with material from the wreckage. In his examination of the motors he found no apparent electrical defect in any of them; he found no evidence of any electrical trouble which might have caused the explosion. It will serve no useful purpose to further comment upon the evidence or indulge in speculation as to what might have caused the explosion.

The doctrine of *res ipsa loquitur* is not applicable. *Rost v. Roberts,* 180 Wis. 207, 192 N. W. 38, 40; *Hubbert v. Aztec Brewing Co.* 26 Cal. App. (2d) 664, 80 Pac. (2d) 185.

In *Hyer v. Janesville,* 101 Wis. 371, 377, 77 N. W. 729, the court said:

"Where there is no direct evidence of how an accident occurred, and the circumstances are clearly as consistent with the theory that it may be ascribed to a cause not actionable as to a cause that is actionable, it is not within the proper province of a jury to guess where the truth lies and make that the foundation for a verdict."

"Proof of a defect and of an injury which might have been caused thereby is not enough. The plaintiff must show by reasonably direct evidence that the defect, and not something else, caused the injury." *Gagan v. Janesville,* 106 Wis. 662, 665, 82 N. W. 558.

"Preponderance of mere possibilities is, of course, not the equivalent of a preponderance of probabilities. Mere possibilities leave the solution of an issue of fact in the field of conjecture and speculation to such an extent as to afford no basis for inferences to a reasonable certainty, and in the absence of at least such inferences there is no sufficient basis for a finding of fact. It will not do to reach a conclusion in favor of the party on whom the burden of proof rests by merely theorizing and conjecturing. There must at least be sufficient evidence to remove the question from the realm of conjecture. *Lezala v. Jazek,* 170 Wis. 532, 536, 175

N. W. 87, 89, 176 N. W. 238." *Creamery Package Mfg. Co. v. Industrial Comm.* 211 Wis. 326, 330, 248 N. W. 140.

Since the jury's findings as to causation rest entirely in the field of conjecture and speculation, their answers cannot stand. *Lansing v. John Strange Paper Co.* 227 Wis. 439, 443, 278 N. W. 857.

Plaintiff asks, that in the event he is not granted judgment upon the verdict, that the judgment be reversed under sec. 251.09, Stats., and a new trial ordered. No specific reason is assigned for such action. This case was fully and well tried by able counsel. There is no likelihood that the cause of the explosion in question could be removed from the field of conjecture upon a retrial any more than upon the last trial.

The defendant's motion for a directed verdict should have been granted.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, with $25 costs, on April 9, 1940.