Wickhem, J.
 

 No question is raised, upon this appeal as to the amount of damages. Appellant contends that there is no evidence to sustain the finding of negligence on its part or liability under the safe-place statute, and that in any case, it is entitled to a judgment over against the defendant, Die-bold Safe & Lock Company. The nature of the contentions requires a review of the facts.
 

 In June, 1931, defendant had installed in its plant by defendant Diebold Safe & Lock Company a tear-gas system designed to prevent daylight holdups. The manufacturer of the system was the Lake Erie Chemical-Company of Dayton. The contract of sale provided that the bank would have the-system examined annually by an expert for a period of three years at a charge of $30 per year. The Diebold Safe & Lock Company also had charge of the inspections of other bank
 
 *292
 
 equipment at an annual fee. Inspection of the tear-gas machine by the Diebold Safe & Lock Company continued after the three years, the last inspection being made about four months before the accident.
 

 On April 11, 1940, while plaintiff was conducting business at the cashier’s cage as a customer, the tear-gas system exploded and gas and powder from a nozzle directly in front of plaintiff burned her, resulting in the injuries for which the suit is maintained. The testimony of the employees of the bank is to the effect that there was no manual operation of the controls of the system which could account for the explosion. At the time of the accident there were just four people in the bank, two employees and two customers.
 

 The device had two sets of foot controls, one in front of each of the windows. To operate one of these controls the operator would reach his foot forward about six inches and with the top of the shoe press upward underneath a bar-like device. After pushing upwards the technique was to release the bar. The first operation would light warning lights at convenient places in the bank. To discharge tear gas the operation was repeated. The first raising of the foot pedal caused a short circuit which turned on the warning lights. In order to set off the tear-gas mechanism this short circuit had to be cleared up and a second short circuit induced by the second raising of the pedal. There were also^ controls at the desks operated by hand buttons so that any employee could easily put the system into operation. The hand controls, like the pedals, required two manipulations to discharge the gas. It is undisputed that four months prior to the accident, the inspection of the system showed it to be in perfect working order. It is also undisputed that about six weeks prior to the accident the janitor in the bank in cleaning accidentally tripped one of the foot controls, putting on the warning lights. Telephonic instructions from the Diebold Safe & Lock Company’s expert were followed and the system was reset by employees of the bank.
 

 
 *293
 
 After the explosion the Diebold Safe & Lock Company’s expert came immediately to the bank, looked over the system, cleaned up the tear-gas nozzle, and reset the system. He testified that in his opinion the device was properly installed and maintained down to the time of the explosion and would not have exploded without use of the tripping device.
 

 Following this visit, a representative of the Underwriters Laboratories inspected the machine and, in doing so, dismantled the system to such an extent that he found himself unable to restore it to running condition without assistance from the Diebold Safe & Lock Company expert. In February, 1943, the plaintiff undertook an inspection of the system to determine, if possible, the causes for explosion. Two alleged defects were discovered: (1) An insulated staple driven through two of the wires of a control box, and (2) two small pieces of solder in a control box. Expert testimony to show that these could account for the explosion was ruled out upon the ground that it related tO' the condition of the machine too long after the accident.
 

 The trial court’s theory was that since the machine was in the custody of the bank and if properly inspected; cared for, and operated, not likely to cause injury, the mere happening of the explosion was evidence of negligence on the part of the bank, under the doctrine of
 
 res ipsa loquitur.
 
 From the evidence as a whole, the trial court inferred that negligence in respect of maintenance and inspection had caused the explosion.
 

 The bank insists that no such negligence was proved and that the doctrine of
 
 res ipsa loquitur
 
 cannot apply because the bank neither manufactured, inspected, nor manually operated the system. If the bank is wrong upon this point, it maintains that the source of its liability must be negligence on the part of the Diebold Safe & Lock Company, and that the latter should sustain the liability. It claims that the safe-place statute does not apply because it had no notice of any defects in the system.
 

 
 *294
 
 The bank insists that this is just another case like
 
 Dahl v. Charles A. Krause Milling Co.
 
 234 Wis. 231, 289 N. W. 626, where the cause of an explosion and the existence of fault were held to be matters of speculation and guess. The contention is based upon the following interpretation of facts: The device was properly .installed and could discharge tear gas only by the succession of two short circuits, the first of which must be cleared before the other could operate. The trial court believed testimony that the machine was not manually operated. All the evidence is that the machine was in perfect condition four months before the accident. It evidently was in perfect condition when the janitor accidentally tripped it because it turned on the warning lights.
 

 The alleged defects consisting of an insulated staple driven through two of the wires of one of the control boxes and some loose solder in one of the other control boxes^were not discovered until three years after the accident, and after the machine had been taken apart ánd put together again and it is said to be impossible h> account for the accident on this basis. The foregoing is claimed tO' make it impossible to do more than guess at the issues of cause and fault.
 

 The trial court considered the situation to be a proper one for application of the rule of
 
 res ipsa loquitur.
 
 The doctrine of
 
 res ipsa loquitur,
 
 as expounded by the Wisconsin cases, offers some difficulties. In
 
 Rost v. Roberts,
 
 180 Wis. 207, 211, 192 N. W. 38, it was said:
 

 “Res ipsa loquitur
 
 is a doctrine which permits an inference of negligence from the mere proof of an injury-or accident where it appears that the injury or accident would not or could not have happened except for the negligent conduct of the defendant. In such cases it is held that the plaintiff makes a case for the jury by proof of the accident or injury, it being-permissible for the jury to infer negligence from the fact that the injury or accident occurred.”
 

 In
 
 Lipsky v. C. Reiss Coal Co.
 
 136 Wis. 307, 117 N. W. 803, the court refers to
 
 res ipsa loquitur
 
 as a doctrine permit
 
 *295
 
 ting an inference of negligence from the happening of an accident, and holds that even where defendant has explained dr accounted for the accident in such a way as to repel an inference of negligence, the facts which originally give rise to this inference may still be considered by the jury in connection with other facts and circumstances in determining whether the accident was due to defendant’s negligence. See also
 
 Diamon v. Iron River Lumber Co.
 
 152 Wis. 372, 140 N, W. 69, and
 
 Guse v. Power & Mining Machinery Co.
 
 151 Wis. 400, 139 N. W. 195. On the other -hand, in
 
 Klitzke v.
 
 Webb, 120 Wis. 254, 97 N. W. 901, the rule is referred to as creating a re-buttable presumption capable of being so rebutted as to leave no issue for the consideration of the jury. To this effect, see
 
 Lillis v. Beaver Dam Woolen Mills,
 
 142 Wis. 128, 124 N. W. 1011, and
 
 Dehmel v.
 
 Smith, 200 Wis. 292, 227 N. W. 274. Another form of expression is that the happening of the accident under circumstances warranting the application of the rule of
 
 res ipsa loquitur
 
 affords reasonable evidence in the absence of explanation that the accident arose from want of care.
 
 Georgia C. Co. v. American M. Co.
 
 169 Wis. 456, 172 N. W. 148;
 
 Klein v. Beeten,
 
 169 Wis. 385, 172 N. W. 736; and
 
 Peschel v.
 
 Klug, 170 Wis. 519, 175 N. W. 805. In a great many situations, it will not matter whether the rule is one of inference or one of presumption. Thus, whether a justifiable inference or a rebuttable presumption, application of the rule permits or requires a jury to find the essential and ultimate fact of negligence, and creates a
 
 prima facie
 
 showing of negligence, to that extent regulating the burden of going forward with proof. If the rule, however, creates a genuine inference of fact, the inference is capable of persisting even after evidence counteracting it is admitted, and does not necessarily disappear after the fashion of a legal presumption upon being “rebutted.” On the other hand, if the rule does nothing more than permit the jury a natural fact inference, the jury is not ordinarily bound to draw such an inference, even in the absence of evidence tending to repel the inference. While from
 
 *296
 
 a reading of the Wisconsin decisions, the doctrine does not appear to have had a wholly consistent career in this court, we think an explanation sufficient for the purposes of this case is comparatively clear. The facts which give rise to the doctrine of
 
 res ipsa loquitur
 
 do warrant a natural inference of negligence. Of necessity, the inferences of negligence arising in cases of
 
 res ipsa loquitur
 
 are of varying strengths and so are the proofs adduced to meet these inferences. In a great many cases involving the existence of defective construction or maintenance in machines, for example, it is possible to meet the inference of negligence with refutation so conclusive as to leave not a scintilla of the inference, and in such a case there is no issue for the jury. On the other hand, if the counter-proof is of a character that need not be treated as a verity, the inference persists and a jury, as in the
 
 Lipsky Case, supra,
 
 may still be permitted to weigh the inference against the so-called rebutting testimony. That this is the scope of the rule is indicated by the following statement in the
 
 Lipsky Case
 
 (p. 312) :
 

 “The inference of negligence which in a proper case may be drawn from the accident itself is one of fact, and the authority of the jury to decide whether it should be drawn can be excluded only in presence of undisputed proof, not merely testimony, that such negligence did not occur.”
 

 In view of the foregoing and its application to the facts of this case, we need not here consider whether in some of its aspects the rule creates a legal presumption. The requisites of the rule are those set forth by Mr. Wigmóre in his work on Evidence, vol. 9, p. 380, sec. 2509:
 

 “(1) The apparatus must be such that in the ordinary instance no injurious operation is to be expected unless from a careless construction, inspection, or user;
 

 “(2) Both inspection and user must have been at the time of the injury in the control of the party charged;
 

 
 *297
 
 “ ( 3) The in j urious occurrence or condition must have happened irrespective of any voluntary action at the time by the party injured. ...”
 

 While these limitations are stated to apply to the rule treated as a presumption, they also state the requisites of the natural inferences which the Wisconsin cases permit the jury tO' draw. The facts of this case warranted an inference of negligence on the part of the bank. The ownership, possession, and control of the tear-gas machine were completely in the hands of defendant. True, it had contracted for inspection of the machine, but it could not so delegate its duties in this respect as to avoid liability. The inspection must be considered to Be within its control. The character of the apparatus is such that no accident or injury is to be expected except from careless construction, inspection, or user. It is a fair inference that negligence in maintenance, inspection, or manual control caused this accident. In fact, the evidence is very nearly conclusive that an explosion could happen by no other means.
 

 As we view it, the evidence adduced upon the trial leads conclusively to the finding that the apparatus was properly installed, had no mechanical defects, was adequately inspected, and was maintained in perfect mechanical condition. It is beyond dispute that the machine was accidentally tripped shortly before the accident and that warning lights came on. It was reset after the accident and worked properly. It is true that some three years after the accident an inspection by plaintiff disclosed a staple driven through a wire in the control box, and also some loose solder in one of the control boxes. This evidence, however, related to the condition of the machine after it had been dismantled and put together again, and is no evidence whatever of improper mechanical condition or maintenance as of the time of the accident. Expert testimony offered upon the basis of this examination was properly rejected by the’trial court. It is a verity that the machine in proper
 
 *298
 
 condition could only discharge tear gas by two successive operations of the control levers, and in the presence of conclusive evidence of its good mechanical condition we consider the finding that the machine was not tripped by operation of the manual levers to be against the great weight and clear preponderance of the evidence.
 

 The defendant bank’s answer to this is that the machine could not be discharged except by two successive operations of the lever and that there is no evidence that the warning lights came on preceding the explosion. There is evidence, however, that the janitor had previously tripped one of the levers and that the machine had been reset by one of the employees of the bank. It may be that the machine was not properly reset and that it was ready to explode upon the next operation of the lever. Testimony that there was no manual operation of the lever at the time of the accident could be, and undoubtedly was honestly given, but upon all the facts we think the weight of the evidence requires that this testimony be discarded as mistaken. The conclusion from this is that the accident was caused by negligent operation and not by negligent maintenance and inspection.
 

 The situation is somewhat similar to that in
 
 Dehmel v. Smith, supra.
 
 There, the doctrine of
 
 res ipsa loquitur
 
 was broad enough to raise a general inference of negligence with respect to the maintenance, inspection, and operation of an elevator. The evidence showed beyond question that the elevator was in good mechanical condition and had been properly inspected. There was no evidence as to the manner of its operation and the jury was permitted to find negligent operation. This was an application of the
 
 res ipsa loquitur
 
 rule in accordance with what has heretofore been said. In the
 
 Dehmel Case
 
 the' original inference was of negligence, either in inspection, maintenance, or control. The court considered the evidence on the first two points so conclusive as to leave nothing for a jury to pass upon, It did, however, consider that it warranted the jury in finding negligent control.
 

 
 *299
 
 In this case we deal with an original inference of greater strength — sufficiently greater to warrant disregarding denials of manipulation by defendant’s employees as contrary to the weight of the evidence as established by the physical facts. The negligence of defendant bank to be inferred at the outset under the rule of
 
 res ipsa loquitur
 
 was general and alternative. The record particularizes it by a process of elimination.
 

 This case is clearly distinguishable from the
 
 Charles A. Krause Milling Co. Case, supra,
 
 cited by defendants. Here, there is a strong inference that the accident must have happened because of negligence attributable to the defendant bank, the principal uncertainty at the outset being which of several possible negligent acts defendant was guilty of. In the
 
 Krause Case
 
 the uncertainty was whether any negligent acts on the part of defendant caused the injury. The possibilities of nonnegligent causes were so great and the evidence so lacking to eliminate them that we were required to hold that no liability was originally inferable or ultimately established. From the foregoing, it is concluded that by the great weight and clear preponderance of the evidence this accident occurred as a result of negligent manipulation of the device by agents of the defendant bank. Under these circumstances, the defendant bank is liable and the Diebold Safe & Lock Company sustains no liability to plaintiff.
 

 By the Coiirt.
 
 — Judgment affirmed.