FREITAG, Appellant, v. CITY OF MONTELLO, Respondent.

*October 3—October 31, 1967.*

412

For the appellant there were briefs by *Callahan, Arnold & Van Metre* of Columbus, and oral argument by *Jack W. Van Metre.*

For the respondent there was a brief and oral argument by *Arno J. Miller* of Portage.

CURRIE, C. J.    The following two issues are presented by this appeal:

(1)    Are the trial court's ultimate finding of no negligence on defendant city's part and the supporting findings of fact against the great weight and clear preponderance of the evidence?

(2)    Did the trial court err in concluding that the doctrine of *res ipsa loquitur* did not apply in this case, where a basement was flooded as the result of an unexplained temporary obstruction in the city's sewer main?

### *Alleged Negligence of City.*

Plaintiff's contentions with respect to the alleged negligence of the city are confined to alleged failures of inspection and maintenance of the sewer main in the area of plaintiff's home.  No issue is raised that the sewer main was not properly constructed.

The duty of a municipality with respect to inspection and maintenance of sewers is well stated by American Jurisprudence as follows:

"The duty of maintaining sewers and drains in good repair includes the obligation to keep them free of obstruction, and a municipality is liable for negligence in its exercise to any person injured by such negligence, whether the damages result from its failure to use reasonable diligence to keep its sewers and drains from becoming clogged,—as where the municipal corporation fails in its duty to exercise a reasonable degree of watchfulness to ascertain the condition of sewers and drains from time to time so as to prevent them from becoming ob-

structed—from its failure to remove an obstruction from a sewer or drain within a reasonable time after actual or constructive notice thereof, or from a trespass by the employees of the municipal corporation in the care or maintenance of a drain. . . ." [1]

Where damage has arisen by reason of a defect in the construction or operation of a sewer, this court has held a municipality is only liable if it fails to remedy the defect after actual or constructive notice of the defect. [2] By adopting the aforenoted rule stated in American Jurisprudence, the scope of liability is now extended so that it may be grounded on failure to reasonably inspect. This is an expansion of the concept of constructive notice and in keeping with the liability imposed upon municipalities for failure to exercise ordinary care which resulted from the elimination of municipal immunity by *Holytz v. Milwaukee*. [3]

The evidence in the instant case discloses that defendant annually cleaned its sewer mains shortly after Labor Day, and as part of this operation a rotating root-cutting device was used. Also, as part of this cleaning operation, brushes were inserted to remove any cut roots or other dislodged material. Such cleaning operations necessarily included an inspection. Some neighboring villages and cities followed this annual cleaning practice, while others cleaned their sewers less frequently. There was testimony that root growth in sewers is a problem in all munici-

---

[1] 38 Am. Jur., *Municipal Corporations*, pp. 341, 342, sec. 636. *See also* 18 McQuillin, *Mun. Corp.* (3d ed. rev.), pp. 476, 477, sec. 53.125 (and p. 42, 1966 Supp.) ; *Floyd v. Butte* (1966), 147 Mont. 305, 412 Pac. 2d 823; Annot. (1958), 59 A. L. R. 2d 281, 308 *et seq.*

[2] *Trustees of University Co-operative Co. v. Madison* (1939), 233 Wis. 100, 108, 109, 288 N. W. 742; *Geuder, Paeschke & Frey Co. v. Milwaukee* (1911), 147 Wis. 491, 505, 133 N. W. 835; *Hart v. Neillsville* (1909), 141 Wis. 3, 8, 9, 123 N. W. 125. Apparently this limited rule of liability was an exception engrafted onto the rule of municipal immunity.

[3] (1962), 17 Wis. 2d 26, 115 N. W. 2d 618.

pally operated sewer systems. Vik and Huismann, defendant's experts, testified that this annual cleaning was good maintenance practice, while Koletzke, plaintiff's expert, testified that it was not. The trial court, by finding of fact No. 11, found that defendant was following proper cleaning practice by cleaning its sewer system once a year. This was in accord with the weight of the evidence.

Huismann further testified that cleaning more often than once a year would be required of the sewer main in question, if there had been a history of considerable root trouble. The record, however, is entirely barren of any history of root trouble in this sewer main. Some neighbors had experienced root trouble in their laterals. The Freitags replaced their concrete lateral with a four-inch cast iron lateral in 1956 because of root problems. Koletzke testified that if roots were entering the laterals in this area, they would also be entering the main. On the other hand Vik testified that he would not consider the Freitag area to be a "troubled area."

On this record we cannot hold as a matter of law that there was any duty on the part of defendant to make any inspection of the sewer main in question in between the dates of its annual cleaning operation. Neither can we hold that the trial court's finding that defendant was not negligent is against the great weight and clear preponderance of the evidence.

### Res Ipsa Loquitur.

We turn now to the issue of whether the trial court committed error in ruling that the doctrine of *res ipsa loquitur* was inapplicable.

In Wisconsin, two elements must appear, before a plaintiff is entitled to an instruction on *res ipsa loquitur*: (1) The accident must be the kind which ordinarily does not occur in the absence of someone's negligence; (2) it

must have been caused by an agency or instrumentality within the exclusive control of the defendant.[4]

The instant sewer main is not an instrumentality entirely within the control of defendant with respect to the materials that are deposited therein. As one of the expert witnesses testified, the temporary obstruction could have been caused by a plastic bag or a children's toy. A lateral in the neighborhood had become clogged from fish heads. Had the flooding of plaintiff's basement been caused by a defect, or break, in the sewer main we then would have an instrumentality entirely within the control of defendant.

Plaintiff correctly argues that, in Wisconsin, right to control is the important factor and that actual exclusive control is not necessary.[5] She then argues that since defendant could regulate and control the use of the sewer by the residents of the city, it cannot claim that it had no control over what is placed into the sewer system. In support of this contention plaintiff cites the case of *Mitchel v. Dover* [6] as authority. In that case the flooding resulted from an obstruction caused by improper discharges of sewage by a tannery into the sewer system. The court stated:

". . . A sewerage system constructed by a municipal corporation is its property and its right to regulate and control the use of it is a necessary incident of its ownership. 64 C. J. S., Municipal Corporations, ss. 1802, 1805. The tannery's right to empty its sewage into the public sewer was not an unlimited one but was subject to the control of the defendant. Whether the defendant's failure to regulate the tannery's use of the sewer more strictly

[4] *Welch v. Neisius* (1967), 35 Wis. 2d 682, 686, 687, 151 N. W. 2d 735; *Turk v. H. C. Prange Co.* (1963), 18 Wis. 2d 547, 553, 558, 559, 119 N. W. 2d 365.

[5] *Goebel v. General Building Service Co.* (1965), 26 Wis. 2d 129, 137, 131 N. W. 2d 852; *Turk v. H. C. Prange Co.*, footnote 4, *supra*, at page 557; *Koehler v. Thiensville State Bank* (1944), 245 Wis. 281, 14 N. W. 2d 15.

[6] (1953), 98 N. H. 285, 99 Atl. 2d 409.

or by some means other than that employed constituted negligence on its part is a question of fact for the Trial Court." [7]

The case did not discuss *res ipsa*. Furthermore, the city had knowledge of the tannery's improper discharges and had taken action prior to the incident in question to prevent such activity. The issue was whether the city should have taken further and more drastic action against the tannery.

It is one thing for a municipality to be able to control what is dumped into a sewer as industrial waste by a particular industry, when such waste has characteristics peculiar to itself which can be identified if found in the flow of sewer mains. It is another thing for a municipality to be able to control the deposit of plastic bags, toys, or fish heads, which, when found in a sewer main, cannot be traced back to the depositor. We deem the right of control in the latter instance, because of its difficulty of enforcement, to be more theoretical than actual. The right to control is of no consequence, unless it can be effectively exercised. Dean Prosser has stated:

". . . It must be enough that the defendant has the right or power of control, and the opportunity to exercise it, as in the case of an owner who is present while another is driving his car, or a landowner who permits visitors to come on his premises. . . ." [8]

If a defendant does not have such an opportunity, it cannot be said that ". . . the cause of the accident was probably such that the defendant would be responsible for any negligence connected with it. . . ." [9]

Plaintiff cites cases from other jurisdictions in which *res ipsa* has been applied in actions involving the flooding of property as the result of a defect or obstruction in a

---

[7] *Id.* at page 289.

[8] Prosser, Law of Torts (3d ed.), ch. 6, p. 224, sec. 39.

[9] *Weggeman v. Seven-Up Bottling Co.* (1958), 5 Wis. 2d 503, 514, 93 N. W. 2d 467, 94 N. W. 2d 645.

city's sewer system. These cases seem to have been drawn largely from an annotation in 11 A. L. R. 2d 1179, 1189–1191. All are distinguishable on their facts from the instant situation. The majority of them are cases involving a break in the sewer pipe.[10]

Much reliance is placed by plaintiff on *Talcott v. New York*,[11] a three to two decision, in which the doctrine of *res ipsa* was held applicable to a situation, where the sewer main obstruction had not resulted from a defect in the pipe. The facts and the rationale for this holding are found in the following extract from the majority opinion:

". . . Thus, the fact that a sewer became obstructed by its ordinary use, there being no evidence that such an obstruction was caused by an unusual or exceptional condition and that such an obstruction was liable to be caused by the gradual accumulation of solids from the sewerage is, it seems to me, sufficient evidence to require from the defendant an explanation as to its watchfulness in ascertaining its condition from time to time and preventing it from becoming obstructed. . . ."[12]

There was no proof in the present case that the sewer became obstructed by its *ordinary* use, or that the obstruction in question was liable to be caused by the gradual accumulation of solids from the sewerage. If such a showing had been made, then defendant's control of the sewer main itself would have become relevant, and the application of *res ipsa* would have presented a closer question.

[10] *Elkhart v. Slabaugh* (Ind. App. 1959), 157 N. E. 2d 842; *Anello v. Kansas City* (Kansas City Court of Appeals, 1955), 286 S. W. 2d 49; *Gravey v. New York* (1907), 117 App. Div. 773, 102 N. Y. Supp. 1010. *Quigley v. Hibbing* (1964), 268 Minn. 541, 129 N. W. 2d 765, involved a break in a water main. Water mains differ from sewer mains in that the municipality has exclusive control of what flows through them as well as of the mains themselves.

[11] (1901), 58 App. Div. 514, 69 N. Y. Supp. 360.

[12] *Id.*, at page 519.

However, if a plaintiff were able to prove such an obstruction, a trial court could consider it such substantial proof of negligence in regard to a defendant municipality's duty to inspect and maintain its sewers, that an instruction on *res ipsa loquitur* would be superfluous.[13]

Moreover, this court has difficulty in perceiving any policy reason for invoking *res ipsa* in a situation where the issue turns upon the duty of inspection, since evidence on this point is not inaccessible to the plaintiff. See 9 Wigmore, *Evidence* (3d ed.), p. 377, sec. 2509. The reason for the rule of *res ipsa* may be seen in its effect. As stated in *Mayer v. Boynton Cab Co.:* [14]

". . . The effect of that rule is to permit a jury to infer from the circumstances that causal negligence was present although the party who has alleged it is unable to produce evidence to specify the respect in which the other party was derelict. . . ." [15]

However, we do not deem this principle of accessibility of the evidence to be an indispensable or controlling requirement for the invoking of *res ipsa*.[16]

We conclude that the trial court properly ruled that the doctrine of *res ipsa* was inapplicable.

*By the Court.*—Judgment affirmed.

[13] *Fehrman v. Smirl* (1964), 25 Wis. 2d 645, 653, 131 N. W. 2d 314.

[14] (1954), 267 Wis. 486, 66 N. W. 2d 136.

[15] *Id.*, at page 489.

[16] *See* Prosser, Law of Torts (3d ed.), pp. 229, 230, sec. 39; 2 Harper and James, Law of Torts (1956 ed.), pp. 1094, 1095, sec. 19.9.