Du Bois, Appellant, vs. De Bauche and others, Respondents.

*May 7—June 3, 1952.*

34

For the appellant there was a brief by *Cohen, Parins & Cherney* of Green Bay, and oral argument by *Robert J. Parins* and *Colburn G. Cherney*.

For the respondents there was a brief by *Kaftan, Kaftan & Kaftan* of Green Bay, and oral argument by *Arthur J. Kaftan*.

BROADFOOT, J. The plaintiff contends that there was sufficient credible evidence to support the answers of the jury to the questions in the special verdict. He calls attention to the fact that the trial court did not change the answer to the first question and therefore it is a verity in this case that the plaintiff was hit by a falling bowling ball. He states that the sequence of events, the movement of the ladder, the exclamation of the plaintiff, the sound of the ball falling on the floor, and the actual presence of a ball on the floor, all occurring at approximately the same time, admit of an inference that there was a ball on or near the ladder, in or out of the bowling bag, and that the act of Salatte in raising the ladder precipitated the fall of the bowling ball. The trial court, in its memorandum decision, answered this contention as follows:

"Salatte saw no ball on the locker that he could recall. In answer to the question whether he was in a position where he could have seen a ball if there were a ball on top of the ladder, he said, 'Well, things had to be done in such a hurry that I'd say offhand if there was a ball there and staring directly at me and I was staring directly at the ball, I would have seen it.' After the accident he saw an unidentified brown bowling

bag on top of the locker ahead of Du Bois. The ladder just about completely covered the locker so that no ball could rest between it and the near edge of the locker. If there were a ball on top of the locker, it would have to be resting on the ladder.

"No one testified that on the night in question or at any other time he ever saw a bowling ball on top of the lockers, at this particular place or at any other place in the locker room. Salatte testified that the orders from his employers were that nothing was ever to be stored on top of the lockers except flat things, such as papers and boxes, and that anything placed up there had to be flat. Occasionally bowlers would put their shoes or bowling bags on top of the tiers of lockers. The orders to Salatte were that no bowling balls or anything that was going to fall were to be put on top of the lockers. So far as the evidence shows, the orders were obeyed.

"To get the ladder down Salatte testified that he had to reach over his head. This indicates that he could not see the top of the lockers but would not indicate that he could not have seen a ball lying thereon. Salatte further testified that he had to push the ladder up first perhaps a half inch and had not started to pull it toward him when the accident occurred. Obviously, he could not with one hand do more than lift the near leg of the ladder to get it higher than the ridge so as to permit it to be slid off, and in raising the near leg, or side, the ladder would be tilted backward, not forward. There is accordingly nothing in the testimony of Salatte as to his movement of the ladder that would cause a ball, if there were one on the ladder, to roll forward toward the face of the lockers. Salatte's testimony on this point is clear:

" 'Q. And this happened simultaneously with your moving the ladder? A. That's right.

" 'Q. You actually had to push the ladder up first, is that right? A. Maybe a half inch.

" 'Q. And then you started pulling it toward you? A. I didn't have a chance to pull it toward me.

" 'Q. You just started to lift it up, is that right? A. I just started to lift it up.'

"Both the plaintiff and Salatte testified that there were a a lot of bowlers in the locker room. The evidence permits of no other conclusion than that several of the bowlers in the

locker room at the time were in possession of their own private balls. No unreal assumption is involved when it is stated that bowling balls sometimes drop from the hand or arm of a bowler. If a bowler carrying his ball in the crook of his arm was passing in the rear of plaintiff and the ball fell, it would have been the one that struck the plaintiff.

"It seems to me that the case presents a situation where the crucial question: Where did the bowling ball come from? lies in the field of conjecture. Furthermore, the possibilities pointing to someone other than the defendants as the responsible party are at least as great as those which point to the defendants. There is nothing in the case that warrants rejection of Salatte's testimony, and, as indicated above, his disturbance of the ladder was such as would cause a ball to move to the rear rather than forward if there were one on the ladder. And, if there were one on the ladder, it would be in all probability securely seated in between the steps. The actual evidence points at least as strongly to a ball dropped by a bowler as to one caused to fall by Salatte."

We agree with the trial court in its analysis of the evidence. The plaintiff had the burden of proving that his injury was caused by some act of negligence on the part of Salatte. He did not meet the burden of proof by any testimony that would warrant the jury to draw the inferences it did in answering the questions in the special verdict. It is apparent that the answers were the result of speculation and conjecture.

The plaintiff finally contends that the facts in this case present a proper instance for the application of the *res ipsa loquitur* doctrine. There are two reasons why that doctrine cannot be applied here. It is fundamental in cases where that doctrine is to be applied that the defendant be vested with the control and management or be responsible for the control of the instrumentality or thing causing the injury. *Cummings v. National Furnace Co.* 60 Wis. 603, 18 N. W. 742, 20 N. W. 665; *Ashton v. Chicago & N. W. R. Co.* 198 Wis. 618, 225 N. W. 328. In *Wisconsin Telephone Co. v. Matson,*

256 Wis. 304, 308, 41 N. W. (2d) 268, the Wisconsin cases involving the application of this doctrine were reviewed as follows:

"Defendant's motion for judgment dismissing the complaint should have been granted unless this is a case where the doctrine of *res ipsa loquitur* may legitimately be employed. In *Kirst v. Milwaukee, Lake Shore & Western Railway Co.* (1879), 46 Wis. 489, 492, 1 N. W. 89; *Cummings v. National Furnace Co.* (1884), 60 Wis. 603, 18 N. W. 742, 20 N. W. 665; and *Dunham v. Wisconsin Gas & Electric Co.* (1938), 228 Wis. 250, 280 N. W. 291, recovery was permitted under that doctrine which was expressed in each of those cases as follows:
" '. . . where the thing is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care.' "

In order to invoke this doctrine it must also appear from the facts in the particular case that the accident of which complaint is made could not have happened except for negligence on the part of the defendants. As to this final reason for holding the doctrine inapplicable in this case the trial court said:

"I think the decision here is controlled by the rule of *Hyer v. Janesville,* 101 Wis. 371; *Baars v. Benda,* 249 Wis. 65; and *Quass v. Milwaukee G. L. Co.* 168 Wis. 575. In the *Baars Case* the following is quoted from the *Hyer Case,* viz.:
" 'Where there is no direct evidence of how an accident occurred, and the circumstances are clearly as consistent with the theory that it may be ascribed to a cause not actionable as to a cause that is actionable, it is not within the proper province of a jury to guess where the truth lies and make that the foundation for a verdict. . . .'
"In the *Wisconsin Telephone Co. Case, supra,* the court points out that the other alternative possible cause of the

accident for which defendant would not be responsible in order to make applicable the rule of the *Hyer* and *Baar Cases* must be disclosed by the evidence and not be a mere figment of the imagination. It was there said:

" 'The jury may not guess that an actionable cause rather than one not actionable produced the accident when the possible nonactionable cause is present in the evidence of the circumstances, but when the nonactionable cause is present only in the imagination the question of speculation between the two or more possible causes does not arise.'

"Such alternative possible cause is clearly here present in the evidence. In this case it is a bowling ball in the possession of one of the numerous bowlers in the locker room then having balls in their possession."

We conclude for the above reasons that the case was correctly disposed of by the trial court.

*By the Court.*—Judgment affirmed.