Ryan, Respondent, vs. Zweck-Wollenberg Company, Defendant: Philco Corporation, Appellant.

*April 8—May 4, 1954.*

633

634

635

For the appellant there was a brief by *Quarles, Spence & Quarles,* attorneys, and *Richard S. Gibbs* of counsel, all of Milwaukee, and oral argument by *Mr. Gibbs.*

For the respondent there was a brief by *Hooker & Wagner* of Waupun, and oral argument by *E. W. Hooker.*

CURRIE, J.  It is a definitely settled principle of law in this state that a manufacturer who places a manufactured article in trade and commerce not inherently, but because of

its negligent construction, imminently dangerous to life and limb, is liable to one who sustains injuries by reason of such negligent construction. *Flies v. Fox Bros. Buick Co.* (1928), 196 Wis. 196, 207, 218 N. W. 855; and *Marsh Wood Products Co. v. Babcock & Wilcox Co.* (1932), 207 Wis. 209, 223, 240 N. W. 392.

In the recent case of *Beadles v. Servel, Inc.* (1951), 344 Ill. App. 133, 143, 100 N. E. (2d) 405, 410, plaintiff instituted action for personal injury as a result of being overcome by carbon monoxide gas which escaped from a secondhand gas-operated refrigerator, which had been manufactured by the defendant. The defendant manufacturer contended that refrigerators were not inherently dangerous articles and, therefore, in the absence of any privity of contract between the plaintiff and it, there could be no recovery. The Illinois court rejected such contention and held that the test to be applied, in determining whether a manufactured article was inherently dangerous, "is the appliance as defectively made inherently dangerous when put to its intended use?" The conclusion reached was that the refrigerator in that case, if defective in the respect alleged by plaintiff, was inherently dangerous.

It is common knowledge that electric current of the voltage and amperage brought into homes by electric service wiring is sufficient not only to cause injury to persons coming in direct contact therewith, but sometimes also to kill. Therefore, any household electric appliance, such as a refrigerator, which is not grounded and becomes charged with electricity as the result of a short circuit, is inherently dangerous. If the short circuit has been due to negligent manufacture, the injured person is entitled to recover damages for such injuries against the manufacturer, provided such person has not been guilty of such a high degree of contributory negligence as to bar recovery.

Philco, in the instant case, apparently concedes that the foregoing is a correct statement of the applicable principle of law governing the liability of it to the plaintiff. The principal contention advanced by Philco is that there is no credible evidence in the record to sustain the finding of the jury that there was negligence on its part. It further maintains that in effect the principle of *res ipsa loquitur* was resorted to in the trial court because of the manner in which defendant's negligence was submitted to the jury and thereafter the verdict of the jury sustained by entering judgment thereon against Philco for plaintiff's damages. We agree that the vital question presented on this appeal is whether the doctrine of *res ipsa loquitur* is applicable to the facts in the instant case.

The statement of the principle of *res ipsa loquitur* enunciated in the English case of *Scott v. London & St. Katherine Docks Co.* (1865), 3 Hurlst. & C. *596, has been widely quoted and accepted, such being as follows (p. *600) :

". . . where the thing is shown to be under the management of the defendant or his servants, and the accident is such as, in the ordinary course of things, does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care."

Among the Wisconsin cases which have quoted the foregoing statement from *Scott v. London & St. Katherine Docks Co., supra,* are *Kirst v. Milwaukee, Lake Shore & Western R. Co.* (1879), 46 Wis. 489, 1 N. W. 89; *Cummings v. National Furnace Co.* (1884), 60 Wis. 603, 612, 18 N. W. 742, 20 N. W. 665; *Dunham v. Wisconsin Gas & Electric Co.* (1938), 228 Wis. 250, 256, 280 N. W. 291; and *Du Bois v. De Bauche* (1952), 262 Wis. 32, 38, 53 N. W. (2d) 628.

Since the rendering of the decision in *Scott v. London &*
*St. Katherine Docks Co., supra,* in 1865, the doctrine of
*res ipsa loquitur* has been discussed and elaborated upon in
numerous American decisions and by text writers and au-
thors of law review articles, and it is now recognized that
three conditions must generally concur in order that the
doctrine of *res ipsa loquitur* may be properly invoked. Pros-
ser, Torts, p. 295, sec. 43, states these conditions to be as
follows:

"The conditions usually stated as necessary for the ap-
plication of the principle of *res ipsa loquitur* are three: (1)
The accident must be of a kind which ordinarily does not
occur in the absence of someone's negligence; (2) it must be
caused by an agency or instrumentality within the exclusive
control of the defendant; (3) it must not have been due to
any voluntary action or contribution on the part of the plain-
tiff."

Because of the fact that the refrigerator in the instant case
had passed out of the possession of the defendant manufac-
turer approximately three years prior to the accident, Philco
maintains that the principle of *res ipsa loquitur* cannot be
invoked in behalf of the plaintiff to establish Philco's negli-
gence inasmuch as the refrigerator was not within the ex-
clusive control of Philco. If the refrigerator were a machine
or appliance, such as an automobile or sewing machine, the
moving parts of which are capable of being operated by the
user, defendant's point would be well taken. In case of in-
jury resulting from the use of such a machine the inference
would be just as strong that the defect causing the injury
occurred as the result of the operator's use as would the in-
ference that the same was due to some defect in manufacture,
and therefore the principle of *res ipsa loquitur* would not be
applicable.

However, the operating mechanism of the refrigerator in
question, consisting of the motor and compressor, was her-

metically sealed within a metal inclosure and is commonly referred to as a "sealed unit." The evidence in the record shows that the sealed unit of the refrigerator causing plaintiff's injury was never opened or tampered with by anyone from the time the refrigerator was removed from its original shipping crate in which Philco had shipped the same, to the time of trial. There was nothing in connection with such sealed unit for the users of the refrigerator to operate. In the use of the refrigerator all that was done was to plug the electric cord of the refrigerator into one of the electric outlets forming part of the wiring system of the home. The testimony in the case definitely established that there was nothing in connection with the wiring of the refrigerator outside of the sealed unit which could have caused a short circuit. On the other hand, the evidence is undisputed that plaintiff did receive a severe electric shock as a result of a short circuit in the refrigerator. The inference, therefore, is almost inescapable that something inside of the sealed unit must have gone wrong to have caused such short circuit.

In connection with the question of whether a defendant who does not have exclusive possession of the article, which caused a plaintiff's injury because of some alleged defect therein, can ever be held liable under the doctrine of *res ipsa loquitur*, Prosser, Torts, p. 298, sec. 43, makes this significant statement:

"Some courts have carried 'control' to ridiculous lengths by requiring that the defendant be in possession of the instrumentality at the time of the accident—thus a customer who sits down in a chair in a store has been denied recovery when it collapses. Of course this is wrong; it loses sight of the real purpose of the requirement in the attempt to reduce it to an absolute rule. All that is necessary is that the defendant have exclusive control of the factors which apparently have caused the accident; and one who supplies a chattel to another may have had sufficient control of its condition although it has passed out of his possession."

Some decisions from other jurisdictions have given recognition to the fact that the control of the defendant supplier of the article may have continued after physical possession of the article was exclusively vested in the purchaser. In *Plunkett v. United Electric Service* (1948), 214 La. 145, 36 So. (2d) 704, 3 A. L. R. (2d) 1437, defendant's employees installed and put into operation in plaintiff's house a heater to which gas was piped. About thirty-nine hours after the heater was put into operation the house was found to be on fire, and there was evidence to support a finding that the fire started near the heater. The occupants of the house testified that no one had tampered with or attempted to manipulate the heater from the time it was installed. In view of this testimony, the fact that the heater was not in the possession or control of the defendant at the time of the inception of the fire was held not to preclude reliance on the doctrine of *res ipsa loquitur* to establish defendant's negligence.

The Minnesota court in *Peterson v. Minnesota Power & Light Co.* (1940), 207 Minn. 387, 291 N. W. 705, 707, applied the doctrine of *res ipsa loquitur* in an action against the defendant power company for injuries sustained by the plaintiff as the result of a charge of electricity flaring before her face while she operated, in the usual manner, an electric kitchen stove purchased from and installed by the electric power company two weeks previously. There was no evidence that the plaintiff or anyone else, except defendant's workmen, had touched the mechanism of the stove or used it in a manner other than what was intended. The court in its opinion stated (207 Minn. 391, 291 N. W. 707):

"After installation, the jury could find that the instrumentality was never improperly used, touched, or interfered with in any way. The control that defendant exercised carried over to the time of the occurrence of the injury. If there was any defect it must have existed at the time the stove was turned over or developed as the result of defendant's default."

In both of the foregoing cases the courts stressed the comparatively short time which had intervened between the turning over of possession by the defendants and the occurrence of the accident. Undoubtedly the opposite result would have been reached if the period between the ending of defendant's exclusive possession and the happening of the accident had been approximately three years as in the case at bar. These two cases are authority, however, for the principle that control exercised over an appliance by a defendant may extend beyond the point when he has parted with possession.

Counsel in this case have cited no case involving the application of the doctrine of *res ipsa loquitur* as to injuries received from a short circuit of an electric refrigerator. Plaintiff does cite *Bosch v. Damm* (1941), 296 Mich. 522, 296 N. W. 669, which permitted recovery against the manufacturer of an electric refrigerator for fire claimed to have been caused as the result of a short circuit in the refrigerator. However, the plaintiff did establish by testimony that a defect in manufacture might have accounted for the short circuit. Such defect consisted in the failure of the manufacturer to protect with a hard-rubber grommet insulated wiring inserted through a punched hole in the refrigerator case. Michigan is one of two states in this country which does not recognize the doctrine of *res ipsa loquitur* as such, but reaches much the same result by permitting the jury to draw inferences from the occurrence of the accident itself under certain conditions, thus treating the happening of the accident as circumstantial evidence. The Michigan court concluded that a question of fact existed, and that it could be reasonably inferred that a fire would not have resulted, except for the want of care of the defendant. The distinction between that case and the case at bar is that the plaintiff here-

in failed to offer any evidence showing any defect in manufacture.

By analogy the sealed-unit feature of the instant case would seem to be fairly close to the bursting-bottle cases which have resulted in a majority of courts invoking the doctrine of *res ipsa loquitur* against the bottler. A substantial minority of the courts have refused in such bursting-bottle cases to apply *res ipsa loquitur* against the bottler on the ground that the bottle at the time of bursting was no longer in exclusive control of the bottler. In the recent case of *Johnson v. Coca Cola Bottling Co.* (1952), 235 Minn. 471, 51 N. W. (2d) 573, in a very comprehensive and well-written opinion the Minnesota court discusses the problem of applying *res ipsa loquitur* in these bursting-bottle cases. The conclusion reached was that it was proper to invoke the doctrine of *res ipsa loquitur* in a case against the bottler for injuries sustained as the result of the bursting of a bottle of carbonated beverage, if the plaintiff can first prove: (1) That the condition of the bottle had not been changed after it left the defendant bottler's possession; (2) that the plaintiff had handled the bottle carefully; and (3) that the injury was not due to any voluntary act on the plaintiff's part. (In Wisconsin, because of our comparative-negligence statute, contributory negligence of the plaintiff precludes recovery only when it amounts to 50 per cent or more of the total aggregate negligence.) As to the question of control it was the theory of the Minnesota court that the defendant bottler had control at the time the negligent act was performed and it was not necessary that such exclusive control should have existed at the time of the accident so long as plaintiff's evidence established that there was no intervening act which would have accounted for the explosion. The opinion is especially valuable as a bibliography listing numerous burst-

ing-bottle decisions from other jurisdictions on both sides of the issue.

For further authority on the application of *res ipsa loquitur* to the bursting of bottled beverages see the annotation in 4 A. L. R. (2d) 466.

The decisions holding that the doctrine of *res ipsa loquitur* is applicable in these bursting-bottle cases seem to us to reach a sound and logical conclusion. Caps on the bottles are sealed by the manufacturing bottler who has placed the carbonated beverage in the bottle. Because of being so sealed there is no possibility of any intervening handler having access to the contents of the bottle. A natural inference to be drawn from the exploding of the bottle, if it is established that the bottle between the time it left the plant of the bottler and the time of explosion was handled in a normal and nonnegligent manner, is that there must have been something negligent in the manner in which the beverage was prepared and bottled by the bottler. Unless a jury is permitted to draw such inference it would be practically impossible for a plaintiff to recover for injuries sustained in such type of case. As the Missouri court well points out in *Stolle v. Anheuser-Busch, Inc.* (1925), 307 Mo. 520, 529, 271 S. W. 497, 500, 39 A. L. R. 1001, 1006:

"These bottled beverages, containing explosive gases, are put upon the market with the intention that they will be transported throughout the country and sold to consumers for the profit of the manufacturer. Obviously this should be at his [the manufacturer's] risk. Public policy requires that the manufacturer should assume the risks and hazards of explosion incident to the reasonable and ordinarily careful transportation and handling of these goods in the usual course of business."

In the instant case we are of the opinion that the plaintiff did establish that there was no intervening negligence on the part of other persons which could have caused a short circuit

in the sealed unit of the refrigerator after it left Philco's possession. Philco is charged with knowledge that such refrigerators are transported by common carrier from its factory to points of distribution and sale and that purchasers of the same do on occasion have to move them the same as other household furniture and appliances when they move from one place of residence to another. Therefore, it was the duty of the defendant to so make such sealed unit that the ordinary jars and jolts received in transportation by common carrier or in moving the refrigerator by motor truck from one location to another would not dislodge its parts so as to cause a short circuit. The evidence discloses the possession and handling of the refrigerator from the time it was uncrated at the shop of the dealer to the time of the accident. It was transported by the dealer in the normal course of business and installed in the Zick home at Fox Lake by merely plugging the refrigerator cord into an electric outlet. When the Zicks moved from Fox Lake to Beaver Dam they employed a professional mover to move the furniture and refrigerator. That such moving had no effect on the mechanism of the refrigerator is attested by the fact that Mrs. Zick noticed the same tingling sensation when mopping the floor in the home at Fox Lake before such moving that was experienced afterward. Further, it was definitely established that no one attempted to adjust or tinker with the sealed-unit mechanism. In other words, Philco's original exclusive control of the sealed unit carried over to the time of the accident even though its physical possession thereof had ended at time of shipment. We, therefore, on the basis of analogy to the bursting-bottle cases, think that it was entirely proper to invoke the doctrine of *res ipsa loquitur* and permit the jury to draw the inference that it did from the short circuit causing plaintiff's injury. Refrigerators do not ordinarily transmit electric current through the handles so as to severely

shock and injure persons who may grasp such handles in the customary use thereof.

The duty to exercise reasonable care on the part of the manufacturer of an article, which, if defective, may be imminently dangerous, includes the proper inspection and testing of the article. Comment *a* of Restatement, 2 Torts, sec. 395, p. 1074, states:

"A garment maker is not required to subject the finished garment to anything like so minute an inspection for the purpose of discovering whether a basting needle has not been left in a seam as is required of the maker of an automobile or of high-speed machinery *or of electrical devices,* in which the slightest inaccuracy may involve danger of death." (Emphasis supplied.)

The defendant adduced testimony through its witness, Schnader, as to the processes followed by Philco in manufacturing its refrigerators. He detailed the numerous tests which were made on defendant's refrigerators for the very purpose of detecting any possible defect in the wiring or motor of the refrigerator so that a defective box would not go through the manufacturing line. Such tests were those approved by the Underwriters' Laboratories. He further stated that no other or greater tests are known to refrigerator manufacturers, such as Philco, which could or might have been used in detecting the presence of either a constant or intermittent short circuit. It is argued that because such testimony was not disputed there was no issue as to defendant's negligence left to submit to the jury. Such contention is based upon the theory that Philco could not be held negligent because it knew of no further way of testing the refrigerator beyond the tests which it did employ.

Such last-mentioned contention raises the interesting question of whether *res ipsa loquitur* constitutes a rebuttable presumption or a permissible inference which a jury is entitled to draw from circumstantial evidence. If it constitutes merely

a rebuttable presumption of negligence on the part of a defendant manufacturer, then such presumption would disappear upon introduction of testimony by the manufacturer that he used due care in his manufacturing processes and subjected the manufactured article to due inspection and tests before releasing the same for sale and distribution. Professor Prosser, in an article entitled, "The Procedural Effect of Res Ipsa Loquitur," appearing in 20 Minnesota Law Review, 241, 265, states the problem as follows:

"The final question, as to the effect of *res ipsa loquitur* when the defendant introduces evidence that the accident was not caused by his negligence, perhaps has given the most difficulty of all. The controversy as to whether the 'presumption' has weight as evidence, and is to be balanced against the evidence of the defendant, arises out of a confusion of terms. It seems clear that a permissible inference is always evidence, has weight as evidence, and remains to be considered by the jury as long as it may reasonably be drawn from all the facts presented. This is merely to say that circumstantial evidence is entitled to consideration so long as reasonable men might base a conclusion on it. On the other hand, a presumption, defined as the plaintiff's right to a directed verdict in the absence of contrary evidence, is defeated when the defendant puts in evidence which will permit the jury reasonably to find in his favor."

In such article, Professor Prosser points out that the courts of this country which have applied the doctrine of *res ipsa loquitur* are divided on the question of the procedural effect to be accorded *res ipsa loquitur*. The greater number of courts treat *res ipsa loquitur* as giving rise to nothing more than a permissible inference. Others accord to it the effect of a presumption, while a few courts have gone still farther and hold its effect to be that of shifting the burden of proof from the plaintiff to the defendant. Wisconsin is listed as one of the states which treats *res ipsa loquitur* as having the effect of a permissible inference.

Mr. Justice WICKHEM, in his opinion in *Koehler v. Thiensville State Bank* (1944), 245 Wis. 281, 14 N. W. (2d) 15, touches upon this problem and the conclusion reached is that set forth in headnote 3 of the syllabus as follows:

"If the inference of negligence arising in a case of *res ipsa loquitur* is met with refutation so conclusive as not to leave a scintilla of the inference, there is no issue for the jury; but if the counterproof is of a character that need not be treated as a verity, the inference still persists and a jury may still be permitted to weigh the inference against the so-called rebutting testimony."

Two of the cases cited in the decision of *Koehler v. Thiensville State Bank, supra,* are *Lipsky v. C. Reiss Coal Co.* (1908), 136 Wis. 307, 117 N. W. 803; and *Rost v. Roberts* (1923), 180 Wis. 207, 192 N. W. 38.

In *Lipsky v. C. Reiss Coal Co., supra,* the court refers to *res ipsa loquitur* as a doctrine permitting an inference of negligence from the happening of an accident, and holds that even where the defendant has explained or accounted for the accident in such a way as to repel an inference of negligence, the facts which originally gave rise to this inference may still be considered by the jury in connection with other facts and circumstances in determining whether the accident was due to the defendant's negligence. The court in its opinion stated (p. 312):

"The inference of negligence which in a proper case may be drawn from the accident itself is one of fact, and the authority of the jury to decide whether it should be drawn can be excluded only in presence of undisputed proof, *not merely testimony,* that such negligence did not occur." (Emphasis supplied.)

To the same effect is the following statement from *Rost v. Roberts, supra* (p. 211):

"*Res ipsa loquitur* is a doctrine which permits an inference of negligence from the mere proof of an injury or accident where it appears that the injury or accident would not or could not have happened except for the negligent conduct of the defendant. In such cases it is held that the plaintiff makes a case for the jury by proof of the accident or injury, it being permissible for the jury to infer negligence from the fact that the injury or accident occurred."

We conclude that in spite of possibly inconsistent statements on the question in some decisions of this court, it is the established law of this state that the precedural effect to be given to *res ipsa loquitur* is that of permissible inference rather than that of rebuttable presumption. The above-quoted extract from the *Lipsky Case* is particularly pertinent to the facts in the instant case. The testimony in behalf of Philco, that it was guilty of no negligence in the manufacturing, testing, and inspection processes employed by it, is not such undisputed proof as would remove the question of Philco's negligence from the jury. If the law were otherwise, a manufacturer against whom it is sought to invoke *res ipsa loquitur* could always avoid liability by testimony that he exercised due care in his manufacturing, testing, and inspection processes, inasmuch as an injured plaintiff would, in the vast majority of cases, be wholly unable to offer any testimony to the contrary.

There remains one further question to be disposed of, and that is the contention of Philco that the plaintiff had such knowledge of the imminently dangerous condition of the refrigerator before the accident as to bar her from recovery in this action. At the most, plaintiff's knowledge of any defect in the refrigerator extended no further than did that of her daughter and son-in-law, the Zicks. Such knowledge consisted of the fact that when a person mopped the floor with water and touched the bottom of the refrigerator a tingling sensation was likely to result. This was an indication that

the bottom of the outside of the refrigerator was charged with electricity, but no one, up to the time of the accident, had experienced such tingling sensation as the result of taking hold of the door handle. The trial court submitted to the jury the following question:

"Prior to the accident did the plaintiff, Ella Ryan, as a reasonable prudent person, know, or should she have known, that the refrigerator was imminently dangerous to life or limb?"

The jury answered such question "No." It seems to us that the question of plaintiff's contributory negligence clearly presented a question of fact for the jury and that it cannot be held as a matter of law that plaintiff should have known prior to the accident that the refrigerator was imminently dangerous.

*By the Court.*—Judgment affirmed.