WEGGEMAN and another, Appellants, v. SEVEN-UP
BOTTLING COMPANY, Respondent.*

*November 5—December 2, 1958.*

---

* Motion for rehearing denied, without costs, on February 3, 1959.

504

506

For the appellants there was a brief by *Smith, Rogers & Smith* of Fort Atkinson, and oral argument by *William H. Rogers* and *Donald L. Smith*.

For the respondent there was a brief by *Schubring, Ryan, Petersen & Sutherland,* and oral argument by *Eugene O. Gehl,* all of Madison.

WINGERT, J. 1. *Denial of judgment for plaintiff.* Appellants' first contention is that the trial court erred in refusing to grant their motion for judgment notwithstanding the verdict. It is argued that since defendant offered no evidence, both the principle *res ipsa loquitur* and the testimony in the record entitled plaintiffs to recover, and that in such a case it would be contrary to public policy to permit the judgment for the defendant to stand.

By the court's instructions, the jury were permitted to infer from the fact of the explosion that the bottle was dangerously defective in manufacture when delivered by defendant and that defendant was negligent in not discovering the defect, if they should find that the condition of the bottle had not been changed after it left defendant's possession, that the accident was not due to any voluntary act on plaintiffs' part, and that nothing had occurred to explain the explosion

on any other ground than that of negligence on the part of the defendant.

Thus plaintiffs were given the benefit, to a limited extent, of the principle *res ipsa loquitur,* substantially as expounded, in its relation to bursting bottles, in *Zarling v. La Salle Coca-Cola Bottling Co.* 2 Wis. (2d) 596, 87 N. W. (2d) 263. We say to a limited extent, because the questions of the special verdict, particularly questions 1 and 2, restricted the inquiry to whether the bottle was dangerous by reason of a defect *in its manufacture,* and did not permit the jury to infer causal negligence on defendant's part in relation to defects arising from abuse subsequent to manufacture. This feature of the case is discussed in section 3 of this opinion.

While the jury were thus permitted to infer from the fact of the explosion, with its background, that the bottle suffered from a manufacturing defect when delivered by defendant and that defendant was negligent in not discovering the defect, the jury declined to do so. In this state, and by the weight of American authority, *res ipsa loquitur* generally gives rise only to a permissible inference of negligence, not a presumption, and if the jury refuses to draw such inference, that is the end of the matter. *Zarling v. La Salle Coca-Cola Bottling Co.* 2 Wis. (2d) 596, 603, 87 N. W. (2d) 263; Harper and James, Law of Torts, p. 1100, sec. 19.11; Prosser, Law of Torts (2d ed.), p. 212, sec. 43.

Plaintiffs argue that since defendant offered no evidence of its own, the inferences of defective bottle and negligence became mandatory. This contention must fail, first, because defendant did adduce evidence, by cross-examining plaintiffs' witness, that the bottle was exposed to substantial hazards of possible damage after it left defendant's hands (see discussion under the next heading) ; and second, because the permissible inference of negligence known as *res ipsa loquitur* is normally not a presumption, and hence need

not be rebutted by the defendant in order to allow the jury to reject it. The latter proposition is normally favorable to plaintiffs, since the inference is capable of persisting even after evidence counteracting it is admitted, and does not necessarily disappear after the fashion of a legal presumption upon being rebutted. *Koehler v. Thiensville State Bank,* 245 Wis. 281, 287, 14 N. W. (2d) 15.

Among the practical results of the permissible-inference theory of *res ipsa loquitur* are these:

"(1) Upon the close of plaintiff's evidence, defendant is not entitled to a nonsuit or directed verdict.

"(2) If defendant also rests at this point without putting in any evidence, plaintiff is *not* entitled to a directed verdict unless upon the facts of a particular case 'the *prima facie* proof is so convincing that the inference of negligence arising therefrom is inescapable if not rebutted by other evidence,' a situation which would not be true in the great majority of cases." 2 Harper and James, Law of Torts, p. 1100, sec. 19.11.

We recognize that the inferences of negligence arising in *res ipsa* cases are of varying strength, depending on the circumstances, and in some situations the inference may be so clear that no reasonable jury could fail to accept it, in which case plaintiff would be entitled to a directed verdict. *Koehler v. Thiensville State Bank,* 245 Wis. 281, 288, 14 N. W. (2d) 15; Prosser, Law of Torts (2d ed.), p. 212, sec. 43.[1]

We do not consider that this is one of those exceptional cases. The inferences that there was a dangerous defect in the manufacture of the bottle and that defendant was negligent in failing to discover it are not so clear that no reasonable jury could fail to draw them. Hence the jury was within its province in refusing to infer that the bottle had such a

[1] In that category, Prosser cites the case of a human toe in a plug of chewing tobacco, *Pillars v. R. J. Reynolds Tobacco Co.* 117 Miss. 490, 78 So. 365.

defect at the time of delivery by the defendant, and plaintiff is not entitled to judgment notwithstanding the verdict. The evidence pertinent to this conclusion is discussed under the next heading.

2. *Refusal to change jury's answer.* Plaintiffs contend that the trial court erred in refusing, after verdict, to change the answer to question 1 from "No" to "Yes," and thereby find that the bottle was dangerous on delivery by defendant by reason of a manufacturing defect, and to answer questions 2 and 3 in the affirmative, and thus find as a matter of law that defendant was causally negligent in failing to discover the defect.

The argument is that the undisputed testimony of Mr. and Mrs. Weggeman that most of the bottle broke into minute fragments, and Prof. Roark's testimony that minute fragmentation on breakage is characteristic of improperly annealed glass, conclusively established that the bottle was improperly annealed and hence dangerously defective. Prof. Roark also testified that glass loses strength under sustained loading; and the store manager testified that cartons of 7-Up were piled four or five high in the storeroom by defendant's deliverymen, the bottom of one carton standing on the tops of bottles in the one below it. Prof. Roark's testimony dealt only with the general behavior of glass, and was not based on any inspection of the particular bottle fragments. He did not testify that no other type of defect or injury to a bottle would lead to extreme fragmentation.

On the other hand, defendant points to the following evidence tending to warrant belief that the bottle may have been damaged after it left the control of defendant. Fifteen other suppliers and four store employees had access to the storeroom at the supermarket, where they may have jolted the bottles of 7-Up. The particular bottle may have been in the store for a long time, perhaps years. Store employees took the bottles from the storeroom to the sales shelf on a hand-

cart. In the main store, the 7-Up was supposed to be stored on a shelf, but plaintiff's father testified he got the 6-pak from a place on or close to the floor. It was at the end of an aisle, where customers and employees passed on three sides and hence the 6-pak was subject to the hazards of cart traffic and foot traffic. Customers sometimes handled the bottles without buying them and bottles may have been dropped on the floor. The boy Gregory was playing with the bottles immediately before the accident, and may have banged the bottle against others or dropped it on the floor. He was sitting in front of the refrigerator, and after the accident the refrigerator was covered with 7-Up, suggesting that he may have struck the bottle against the refrigerator door while putting the bottles back pursuant to his mother's instruction.

While the evidence thus cited by defendant merely suggests ways in which the bottle may have been damaged between its delivery by defendant and the explosion, and does not prove that it was so damaged, that relied on by plaintiffs also merely shows that the bottle may have been badly annealed or overloaded. We cannot say that the jury went beyond its province in rejecting the inference that there was a dangerous defect in manufacture. Plaintiffs had the burden of proof, and while *res ipsa* gave them an assist, it was not conclusive on the jury.

Even if we were to accept the proposition that the bottle was defectively annealed and thereby dangerous, there was no evidence that the defect should have been discovered by the bottler in the exercise of ordinary care. Hence the court did not err in refusing to answer question 2 in the affirmative. Again *res ipsa* would have permitted such an answer, but did not compel it.

3. *Form of special verdict.* As already pointed out, the liability questions of the special verdict unduly limited the jury in the scope of the inference they were permitted to draw from the fact of the explosion. They were permitted to infer

only that the bottle was or was not dangerous by reason of a defect in its manufacture.

If plaintiffs made a case for application of *res ipsa,* and we think they did, they thereby became entitled, on appropriate request, to have the jury given latitude to infer that the bottle was dangerously defective when it left defendant's hands and that defendant was negligent in delivering it into the stream of commerce, whatever the character of the defect. It is well known that bottle failure may result from such injuries incident to long use as scratches, nicks, and internal abrasion resulting from washing with brushes, as well as from defects in manufacture. See Dingwall, Exploding Bottles, 11 NACCA Law Journal, 158; Night, Let the Bottler Beware! 21 Insurance Counsel Journal, 72.

Doubtless the court was led to limit question 1 to defective manufacture, by plaintiffs' concentration on the effort to show that the bottle was probably defective in manufacture by reason of improper annealing. Where *res ipsa* applies, however, the plaintiff is not required to prove or point out a single specific defect out of several that are possible. Where any one of several types of defect may have caused the accident the jury may infer negligence on the part of defendant in issuing a defective product, without pinpointing the specific defect.

It follows that plaintiffs were entitled, on proper request, to have questions submitted to the jury which were not limited to defects in manufacture. So far as the record discloses, however, plaintiffs failed to ask for any different question or object to the form of questions 1 and 2, and hence are foreclosed from obtaining a new trial as a matter of right because of error in the form of the special verdict. *Nimits v. Motor Transport Co.* 253 Wis. 362, 364, 34 N. W. (2d) 116; *Kreft v. Charles,* 268 Wis. 44, 48, 66 N. W. (2d) 618. We have considered the subject on its merits because the form of the question has a bearing on the propriety of

giving and refusing the instructions discussed under heading 5, and on the exercise of our discretionary power to order a new trial under sec. 251.09, Stats.

4. *A case made for res ipsa loquitur.* Defendant argues that plaintiffs failed to make a case for *res ipsa loquitur* and that a verdict should have been directed for defendant; but we are satisfied that a sufficient foundation for *res ipsa* was established. To be sure, plaintiffs did not prove conclusively that the condition of the bottle had not changed after it left the defendant's possession, or that Gregory handled it carefully, or that the injury was not due to any voluntary act on plaintiffs' part. Absolute or even clear proof of such matters is not necessary to warrant submission of *res ipsa loquitur.* It is not essential that the possibility of other causes of the accident be altogether eliminated, but only that their likelihood be so reduced that the greater probability lies at defendant's door. The evidence must afford a rational basis for concluding that the cause of the accident was probably such that the defendant would be responsible for any negligence connected with it. 2 Harper and James, Law of Torts, p. 1086, sec. 19.7; Prosser, Law of Torts (2d ed.), p. 205, sec. 42.

In the instant case we think the evidence afforded sufficient basis for a reasonable inference that after its delivery by defendant the bottle encountered only such usage as is normal in the course of retail distribution and consumer handling, and that much the greater probability was that it was defective when it left defendant's possession. The bottler may be held to knowledge that exposure to hazards of damage from jolting, jarring, and rough handling by retailers, customers, and consumers is usual for his product and that nicks and abrasions thereby sustained may make it dangerous; and if he negligently fails to put out a product that will stand up under treatment which if not normal is not unusual, he must

assume the risk of resulting injuries. See *Ryan v. Zweck-Wollenberg Co.* 266 Wis. 630, 644, 64 N. W. (2d) 226.

5. *Error in instructing jury.* After instructing that ordinarily a 7-Up bottle is not an inherently dangerous instrumentality, the court gave the following instructions:

"The seller of a thing reasonably certain to imperil life and limb, if negligently made, with knowledge that it will be used by others, is required to use ordinary care to prevent injuries to them as a result of negligence *in the manufacture* thereof. . . . Thus, you are instructed that it was the duty of the defendant . . . to use ordinary care in the inspection and handling of its product in order to determine whether it had been *defectively manufactured,* and to use ordinary care in preparing its product for the market."

In the context of the present case, these instructions were deficient in that they tended to focus the attention of the jury on defects in manufacture, to the implied exclusion of defects occurring thereafter but before final delivery by the bottler.

In instructing on *res ipsa loquitur,* the court told the jury that before negligence might be inferred,—

". . . it is necessary first that the plaintiff *establishes* that the condition of the bottle had not changed after it left the bottler's possession, that the injury was not due to any voluntary act on the plaintiff's part, and that nothing occurred between the time that the bottle left the defendant bottler's hands until the time of the explosion, that would rebut or explain the accident or provide a cause other than negligence on the part of the defendant Bottling Company."

This instruction placed too heavy a burden on the plaintiffs, by requiring them to establish the facts stated as a prerequisite to the drawing of an inference of negligence on the part of the defendant. As we have pointed out under the previous heading, it is not necessary in order to obtain the

benefit of *res ipsa loquitur* that the plaintiff prove that the bottle had not been damaged after it left the defendant's possession, which in most cases of this sort would be impossible. It is enough that he show facts on the basis of which the jury may rationally conclude that the defect probably existed at a time when defendant in the exercise of ordinary care would have discovered it.

It does not appear that plaintiffs objected specifically to the quoted instructions, either before the jury retired or by motion after verdict, although after verdict they moved for a new trial on the ground, among others, "that the court erred in instructing the jury on the application of *res ipsa loquitur* to the evidence in the case." While failure to make a sufficiently specific objection precludes a right to reversal on account of the error, the exercise of our power to grant a new trial in the interest of justice is not dependent on whether the aggrieved party protected his right by objection or motion in the trial court. *Wells v. Dairyland Mut. Ins. Co.* 274 Wis. 505, 518, 80 N. W. (2d) 380.

Plaintiff duly requested, and the court refused, the following instruction:

"That it is common knowledge that the bottles of carbonated beverage are transported by truck and car in the process of distribution and sale, that in the process of such transportation and handling by store employees and purchasers such bottles of carbonated beverage are subjected to ordinary jars and jolts, and that frequently bottles of such beverage do get into the hands of children and subjected to the type of handling normally associated with children. You are further instructed that the defendant is charged with the knowledge that its product may be subjected to the type of handling, jars, and jolts, as above indicated, and in such manner that the tensile strength of the bottle may be reduced."

This was a proper instruction to be given, and in the presence of the instructions quoted above we think the court

should have given it. While the trial court has wide discretion in giving or refusing requested instructions, a fair balance should be sought, and undue prominence should not be given to the contention of one party without giving comparable prominence to the reasonable contention of the other. *Kuklinski v. Dibelius,* 267 Wis. 378, 381, 66 N. W. (2d) 169. Failure of the court to give an instruction which would apprise the jury of the duty which the defendant owed to the plaintiff may constitute prejudicial error requiring a new trial. *Haefner v. Batz Seed Farms,* 255 Wis. 438, 440, 39 N. W. (2d) 386.

In the instant case, the instructions having focused the attention of the jury on the bottler's duty to use ordinary care with respect to defects in manufacture, and having overstated the requirement that damage to the bottle subsequent to its delivery by defendant be negatived as a prerequisite to the drawing of an inference of negligence on the part of the defendant, the requested instruction just quoted would have tended to restore a proper balance to instructions which were unduly favorable to defendant.

6. *New trial in interest of justice.* It may be that none of the errors in submission of the case to the jury in the trial court, taken alone, would require reversal, plaintiffs having failed to make a proper record of timely objection, and the granting or refusal of a requested instruction such as that last above quoted being so largely a matter of discretion with the trial judge. We have nevertheless concluded to exercise our discretion under sec. 251.09, Stats., and order a new trial because it appears to us that the real controversy has not been fully tried and that justice has probably miscarried. No criticism having been made of the jury's findings with respect to damages, those issues need not be retried.

*By the Court.*—Judgment reversed, with directions to grant a new trial on the issues other than damages.

BROWN, J., took no part.

The following memorandum was filed February 3, 1959:

PER CURIAM (*on motion for rehearing*). The brief submitted in behalf of the defendant on the motion for rehearing contends that the damages awarded are high, and that there was no occasion in the trial court for the defendant to have raised any issue as to the same inasmuch as the jury had found no negligence on its part. Under these circumstances we deem that the new trial should extend to all issues.

The original mandate, therefore, is amended to read as follows:

"*By the Court.*—Judgment reversed, and cause remanded with directions to grant a new trial on all issues."

The motion for rehearing is denied without costs.