FLEISCHMAN and another, Appellants, v. HOLZ, d/b/a SERVICE CAB, and another, Respondents.

*March 6—March 31, 1964.*

For the appellants there was a brief by *Kersten & McKinnon* of Milwaukee, and oral argument by *Arlo A. McKinnon*.

For the respondents there was a brief by *O'Melia & Kaye* of Rhinelander, and oral argument by *John F. O'Melia*.

CURRIE, C. J.   Plaintiffs seek a new trial upon these alleged grounds of error:

(1) The trial court by its instructions to the jury erroneously confined the negligence issue to whether Holz or Mrs. Fleischman was responsible for closing the taxicab door even though there was evidence that would warrant a finding that Holz was negligent in other respects.

(2) The trial court erred in failing to instruct the jury with respect to the degree of care which Holz as a common carrier owed to Mrs. Fleischman.

(3) The trial court erred in failing to give plaintiffs' requested instruction on *res ipsa loquitur*.

(4) The trial court erred on the *voir dire* examination in refusing to make, or permit to be made, inquiry whether any member of the jury panel was employed by or was a policyholder of Anchor Casualty Insurance Company.

*Confining Negligence Issue to Closing of Door.*

The trial court submitted two forms of general verdict to the jury. Verdict No. 1, in pertinent part, provided, "We, the jury, find for the plaintiffs and assess damages as follows." Verdict No. 2, which was the one returned by the jury, read, "We, the jury, find for the defendant, Henry Holz."

In instructing the jury, the trial court charged in part as follows:

"If you are satisfied to a reasonable certainty, by the greater weight of the credible evidence, that Henry Holz closed the door upon plaintiff's thumb, then he failed to exercise that degree of care imposed upon him as a cab operator, and caused plaintiff's injuries; and you will select and answer verdict No. 1.

"If, however, you are not satisfied to that degree of certainty, by the proper weight of the evidence, that Henry Holz closed the door upon the plaintiff's thumb, then you will select and answer verdict No. 2."

This instruction clearly limited the negligence issue as to whether Holz closed the door on Mrs. Fleischman's thumb. Plaintiffs contend that the evidence would permit a jury finding of negligence against Holz even though he did not so close the door. In support of this contention plaintiffs' brief states that a duty was imposed on Holz "to observe the exit of the passenger and render such assistance . . . as the circumstances might require." In order to pass on this issue of whether the trial court erred in confining too narrowly the negligence issue submitted, it becomes necessary to review the pertinent evidence adduced at the trial.

The taxicab was a 1958 Ford four-door sedan. Mrs. Fleischman was the only passenger and sat on the right side of the rear seat. Holz stopped the cab at the curb in front of the house which was Mrs. Fleischman's point of destination. The street was level at this point.

Her testimony as to what there transpired is as follows: She handed Holz a dollar bill which he placed on the front seat beside him and he gave her a fifty-cent piece in change. She then opened the right rear door, which hinges on the center post. She had the strap of her handbag slung over her left forearm, the bag itself being eight to 10 inches below her forearm; and an apron was folded over her right arm. She got out of the cab and had both feet on the curbing. She then felt a tug on her purse, and her arm was pulled back. She further testified that Holz slammed the door on her thumb. She admitted, however, that she did not see him close the door, but was sure he did so. When she last looked at Holz he was looking in her direction and had his right arm extended over the front seat toward the door. When the door closed on her thumb the purse was free of the door and outside the cab.

In her adverse examination before trial Mrs. Fleischman testified:

"When I got out of the cab my—As I walked out my purse seemed to be as if it were caught, and I gave an extra tug, and in that moment the door was slammed on my thumb."

Holz's version of what happened is as follows: When he stopped the cab he kept his right foot on the brake. He watched Mrs. Fleischman until he was reasonably sure she was outside of the cab. He was looking in her general direction. He did not know that Mrs. Fleischman had caught her handbag on the door and she did not notify him that this had occurred. He did not close the door nor did he see her do so. Holz wears shirts with a 32-inch sleeve length. Measurements made by Holz and his attorney disclosed that if Holz sat behind the wheel and extended his right arm toward the right rear door his fingertips were 16 inches from the crank on the door for raising and lowering the glass, and 26 inches from the door handle.

Plaintiffs produced a witness of comparable build to Holz who testified that by moving his buttocks nine to nine and one-half inches to the right from his position of sitting behind the wheel of the taxicab he could reach far enough to grab the window knob of the right rear door, apparently referring to the window crank.

Plaintiffs contend that the evidence would support a finding of causal negligence against Holz in these respects: (1) In failing to personally attend to opening and closing the door for Mrs. Fleischman; or (2) in failing to see that her handbag caught on the door and either warning her of danger, or shifting his position to the right so that he could have grabbed the window crank and prevented the door slamming on Mrs. Fleischman's thumb.

The rule as to when a taxicab driver is required to assist a passenger boarding or alighting is well stated in the annotation in 75 A. L. R. (2d) 988, 998, as follows:

". . . the duty of a taxicab driver to assist a passenger in boarding or alighting from the conveyance may arise when the surrounding circumstances are such as to suggest to him the necessity of assistance, and that the obligation of the carrier in this respect is dependent largely upon the nature of the vehicle, the facility with which a passenger may enter or leave the conveyance, and similar circumstances."

*King v. Vets Cab, Inc.* (1956), 179 Kan. 379, 383, 295 Pac. (2d) 605, 56 A. L. R. (2d) 1249, and *Hardy v. Ingram* (1962), 257 N. C. 473, 475, 126 S. E. (2d) 55, state this rule in substantially the same terms as above. See also *Frederick v. Yellow Cab Co. of Philadelphia* (3d Cir. 1952), 200 Fed. (2d) 483; *Somerset v. Stinson* (Ohio App. 1955), 141 N. E. (2d) 781; and *Schickel v. Yellow Cab Co.* (1952), 369 Pa. 356, 85 Atl. (2d) 138. These cases hold that a taxicab driver has no duty to assist a passenger to alight in the absence of special circumstances or a request for

assistance. The Massachusetts and North Carolina courts in recent cases found no negligence as a matter of law where taxicab drivers failed to open doors or otherwise assist lady passengers in alighting. *Langton v. Mason* (Mass. 1962), 186 N. E. (2d) 711, and *Hardy v. Ingram, supra.*

In a discussion between the trial judge and counsel after the close of the testimony, with respect to the form of verdict to be submitted and the instructions to be given the jury, the judge stated:

> "As an operator of a public transportation vehicle he would be held to the highest degree of care consistent with the operation of cabs. However, I am going to have to tell the jury that he had no obligation with respect to seeing her or helping her out of the car, or to open or close the door for her."

We agree with this conclusion of the trial court. The apron which Mrs. Fleischman carried was not such an encumbrance as to require Holz to open and close the cab door or to assist her in alighting.

As previously noted, there is also a question of whether a jury issue was presented as to whether Holz should have seen that Mrs. Fleischman's handbag caught on the door, and in failing to warn her of danger or in grabbing the door so as to prevent it closing on her thumb. At the time Mrs. Fleischman caught her handbag on the door and felt a tug she was already outside of the cab. This apparently is what caused her to know that the handbag had caught on something. She testified, however, that at the moment she felt the tug the door slammed on her thumb. Because the jury found by their verdict that Holz did not slam the door on her thumb, plaintiffs now argue that there is an inference that the catching of the handbag on the inside door handle and latch is what caused the door to close. If that is so, there was no time in which Holz could have voiced an effective warning, assuming it was his duty to have seen that

the handbag had caught on the door. Seated as he was back of the wheel, he could not have reached the rear right door in time to have prevented its closing without first shifting his buttocks at least nine inches to the right. By that time the door would have closed on Mrs. Fleischman's thumb.

We find no error in the trial court's confining the issue of Holz's negligence as to whether he closed the door on Mrs. Fleischman's thumb.

The cases relied upon by plaintiffs are readily distinguishable: In *North v. Williams* (Okla. 1961), 366 Pac. (2d) 406, both the passenger and driver testified that the driver was the one who closed the door; in *Beck v. Wade* (1959), 100 Ga. App. 79, 110 S. E. (2d) 43, there was a defective door, the passenger was burdened with schoolbooks, and the drivers had orders from the employer to open and close doors themselves and not let the passengers do it; in *Allen v. Miles* (Ky. 1954), 265 S. W. (2d) 445, under passenger's version of evidence there was a reasonable inference that the door was closed by the driver or by a sudden movement of the cab; and in *Dickson v. Yellow Cab Co.* (La. App. 1952), 61 So. (2d) 230, involving a seventy-five-year-old passenger, the front door slammed on passenger's hand as a result of the slant of the hill on which the cab was stopped.

### Failure to Instruct With Respect to Degree of Care.

Plaintiffs also claim that prejudicial error was committed by the trial court in failing to instruct the jury with respect to the degree of care Holz owed to Mrs. Fleischman as a common carrier. This court held in *Anderson v. Yellow Cab Co.* (1923), 179 Wis. 300, 304, 191 N. W. 748, 31 A. L. R. 1197, that defendant cab company owed to plaintiff passenger the highest degree of care consistent with the proper trans-

action of its business. *Scales v. Boynton Cab Co.* (1929), 198 Wis. 293, 294, 223 N. W. 836, 69 A. L. R. 978, reiterated this rule and held a taxicab operator to be a common carrier.

The trial court, in the discussion had with counsel about framing the verdict and instructing the jury, stated that the degree of care required of Holz was that laid down in the *Anderson* and *Scales Cases.* The trial court, however, declared it unnecessary to embody this in an instruction because the issue of negligence boiled down to whether Holz closed the door on Mrs. Fleischman's thumb. Inasmuch as we concur in this latter conclusion, we agree it was unnecessary to give a specific instruction with respect to the degree of care owed by Holz as a common carrier. An instruction on the degree of care owed by Holz to Mrs. Fleischman would not assist the jury in deciding who closed the door. The instruction which was given in effect told the jury that whatever this degree of care was, Holz was negligent if the jury found that he closed the door on Mrs. Fleischman's thumb.

*Res Ipsa Loquitur.*

One of the fundamental requirements for the application of *res ipsa loquitur* is that the instrumentality which causes the harm to plaintiff must have been within the exclusive control of defendant. *Zarling v. La Salle Coca-Cola Bottling Co.* (1958), 2 Wis. (2d) 596, 600, 87 N. W. (2d) 263; *Ryan v. Zweck-Wollenberg Co.* (1954), 266 Wis. 630, 639, 64 N. W. (2d) 226. In this case such instrumentality was the cab door which Mrs. Fleischman had opened. At the time it closed on her thumb it was as much in her control as that of Holz.

It is our considered opinion that this was not a proper case in which to have given a *res ipsa loquitur* instruction.

## The Voir Dire Examination.

Anchor Casualty Company of St. Paul (hereinafter "Anchor Casualty"), as well as Agriculture Insurance Company of New York (hereinafter "Agriculture Insurance"), was named a party defendant in the original summons and complaint. On December 31, 1961, Anchor Casualty merged with Agriculture Insurance and thereafter ceased to exist. This merger was called to the attention of the trial court at the time of the pretrial conference. The trial court instructed the clerk of court not to mention the name of Anchor Casualty to the jury in the title of the case at the time of impaneling the jury, and this instruction was complied with, but Agriculture Company was mentioned as a party defendant as the insurer of Holz. In the questioning of the jury on *voir dire,* the trial judge asked the jury, "Does anyone have any connection, or association in any capacity whatsoever, or as a stockholder, of Agriculture Insurance Company?"—to which there was no response.

After the trial had commenced and Mrs. Fleischman had taken the stand and had given several pages of testimony, a conference took place between the trial court and counsel in the absence of the jury. In this conference plaintiff's counsel mentioned that at the time of the *voir dire* examination he had requested that a question be asked of the jury panel as to any possible connection between any juror and Anchor Casualty and that this request had been denied. Plaintiffs' counsel then renewed the request. The trial court denied the request and dismissed the action as to Anchor. The trial court pointed out that the case had been so handled that no juror was aware that Anchor had been a party, and stated, "I believe counsel then stated, and now repeats, that it was only a suspicion on his part that some members of this

Antigo jury might have some association or connection with Anchor Casualty Company."

Technically, Anchor Casualty was still a party defendant at the time of the *voir dire* examination. Under the rule of *Filipiak v. Plombon* (1962), 15 Wis. (2d) 484, 495, 113 N. W. (2d) 365, where an insurance company is a defendant at time of trial it is proper on the *voir dire* to ask whether any juror has any connection with such insurer. In the instant case, if such a question had been put, it should have been so framed as to bring out that Anchor Casualty was a predecessor company which had been merged into Agriculture Insurance.

We can conceive of no prejudice to plaintiffs in the trial court's ruling even if it was erroneous. Questioning on the *voir dire* disclosed that none of the 12 selected jurors had ever heard of the accident. Furthermore, none had ever had any connection with Agriculture Insurance.

*By the Court.*—Judgment affirmed.